BRYAN et al. v. BRYAN et al.

No. 6710.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 29, 1953.

Rehearing Denied Nov. 19, 1953.

R. T. Bailey, Dallas, for appellant Aetna Casualty & Surety Co.

E. P. Bryan, Dallas, and Jones & Jones, Mineola, for appellants, E. P. and Lena Bryan.

Eades & Eades, Dallas, for appellee.

WILLIAMS, Justice.

Appellees Cardis W. Bryan and his sister, Margaret Humphreys, a feme sole, the plaintiffs below, are the children and only heirs of Minnie Bryan. Minnie, who married E. P. Bryan, their father, in 1900, died intestate, July 16, 1946. Their father and Lena Bryan, his present wife, were married July 19, 1949. No administration was had on the estate of Minnie Bryan. In the spring of 1952, about 5½ years after her death, appellees filed this suit to cancel two conveyances of land theretofore executed by their father, which they alleged were community property of

Minnie and E. P. Bryan, for adjudication of their alleged interests in the lands involved in above mentioned conveyances and in other realty; for partition; and for an accounting and adjustment of equities. Among the realty interests described in their pleadings and which they alleged were community property of E. P. and Minnie Bryan, were an undivided $\frac{28}{60}$ interest in the West half of Lot No. 11 in Block 22 in the town of Hawkins; a 320-acre tract in Wood County; the Junius Street residence or homestead and the Breezy Hill properties in Dallas.

E. P. and Lena Bryan together with R. D. Seaton and J. L. Cleveland were named as defendants. The latter two disclaimed any interest. E. P. and Lena Bryan, unless otherwise indicated, will be referred to as appellants. Aetna Casualty and Surety Company, also an appellant who was impleaded and who was denied a recovery on its action, will henceforth be referred to as Aetna.

Under their first point appellants assert that the trial court was without jurisdiction to enter any judgment for lack of necessary and indispensable parties. They direct their arguments and citation of authorities in support of this point solely to that portion of the judgment which adjudicated the title to the $\frac{28}{60}$ interest in the Hawkins lot to be community property and awarded appellees each an undivided interest of one-fourth in same, together with like interests in the bonus heretofore paid to E. P. Bryan for an oil and gas lease on it, and to the proceeds of oil theretofore run and thereafter to be produced from this oil producing interest. The attack for the first time is made on this appeal.

The owners of the remaining interests or the other $\frac{32}{60}$ interest were not parties to this suit. The validity of the outstanding leasehold estate held by the operator of such estate is recognized and is in nowise involved here.

In their pleadings appellees alleged that the $\frac{28}{60}$ interest in the Hawkins lot and the entire 320-acre tract were both community property of their parents; that on January 11, 1950, their father executed a deed to defendant R. D. Seaton which purported to convey the Hawkins interest and the latter in turn had executed a deed which purported to convey this Hawkins interest to Mrs. Lena Bryan, "as her sole and separate estate"; that on January 4, 1951, their father, purporting to act as survivor of the community estate, had executed a deed which purported to convey the 320-acre tract to J. O. Cleveland, who in turn had conveyed the tract to Mrs. Lena Bryan "as her sole and separate estate"; that above four instruments were duly. recorded; that these conveyances were fictitious and simulated transactions, in an attempt on the part of appellants to defraud appellees of their interests.

Appellees after alleging above facts with respect to the execution of the four deeds and their respective one-fourth interests in the properties prayed that these deeds be cancelled. They specifically alleged and prayed "for recovery of the title and possession of an undivided one-fourth interest each in and to the said $\frac{28}{60}$ interest in said lot * * * and for a recovery of a similar interest in the bonus money and proceeds of oil therefrom. Appellants specially denied the title and claims of appellees in this $\frac{28}{60}$ interest; denied it was any part of the community estate; asserted the validity of above deeds and further answered that this Hawkins lot interest, as will more fully appear in a discussion of the point that follows, was his separate property. It is unnecessary to detail the pleadings, evidence or decree as to the 320-acre tract except to note that appellants asserted that this tract had been sold to pay community debts; that the trial court found against appellants on such a claim; and found as to this 320 acres, it was susceptible of being partitioned in kind between appellants and appellees, the owners, and with appointment of commissioners ordered such a partition.

Based on ample evidence, the court cancelled and held for naught the four conveyances on the ground of fraud; adjudged the $\frac{28}{60}$ interest to be community

property and awarded to each appellee "the title and possession of one-fourth of said $^{28}/_{60}$ interest, together with like interest in the oil and other minerals therein, subject to said oil and gas lease executed in favor of Earl Hollandsworth:" Mrs. Lena Bryan was awarded the other $^{14}/_{60}$ interest or ½ of the $^{28}/_{60}$ interest. The decree further awarded appellees each ¼ of the amount of the lease bonus and of the proceeds of oil runs and to be run; and to Mrs. Lena Bryan the other half.

■ As appellants assert, "the rule seems to be well established that before property can be partitioned, all the joint owners or co-tenants must be made parties either plaintiff or defendant, in order that the court ordering partition may determine the interest each party has therein and make a proper distribution of the property," citing Maxwell's Unknown Heirs v. Bolding, Tex.Civ.App., 11 S.W.2d 814, which is quoted with approval in Blanchard v. Blanchard, Tex.Civ.App., 105 S.W.2d 302; Bowlin v. Freeland, 289 S.W. 721; 68, C.J.S. Partition, § 73.

■ If it be assumed or conceded that the suit with respect to the $^{28}/_{60}$ Hawkins lot interest be that for partition, above rule would not control the disposition of point one. As stated in Noble v. Meyers, 76 Tex. 280, 13 S.W. 229, 230: "As long as the pleadings or evidence fail to show, in a suit for partition, *that there are persons interested in the title that is the subject of that suit* who have not been made parties to it, the proceeding may properly be prosecuted to a final decree and execution." (Italics ours.) Title to the $^{28}/_{60}$ interest, whether it was the separate estate of E. P. Bryan or the community property of him and his deceased wife was the subject or issue litigated. The bulk of the evidence in this record was directed to this issue. The court in his findings of facts and conclusions of law specifically dealt with this title issue to the $^{28}/_{60}$ interest. Neither did the pleadings seek nor does the judgment in anywise adjudicate nor partition

nor affect the title of the interest of any person not a party to the suit. Title to the whole of this Hawkins property was not before the court and it was never intended to be and the court did not attempt to take the whole of such property within its jurisdiction.

■ Point one is overruled for the further reason that under this record, hereinbefore detailed, this suit as to the $^{28}/_{60}$ interest was for title. Hess v. Webb, 103 Tex. 46, 123 S.W. 111; Shell Petroleum Corp. v. Grays, 122 Tex. 491, 62 S.W.2d 113, 118; Pena v. Sling, 135 Tex. 200, 140 S.W.2d 441, 128 A.L.R. 1223. "A partition suit is based upon the theory of a common title, and not of disputed ownership." Green v. Churchwell, Tex.Civ.App., 222 S.W. 341; Montgomery v. Huff, Tex. Civ.App., 11 S.W.2d 237, 240; 41 T.J., page 454; 3 A.T.J., Appeal and Error, pp. 168, 171.

E. P. Bryan, a practicing attorney for many years, on October 19, 1943, accepted a contract of employment with power of attorney from one M. W. Harris in which the latter granted and conveyed to the former a present undivided one-half interest in the Hawkins property. This power of attorney coupled with such conveyance of a present interest was forthwith recorded in the Wood County deed records.

Pursuant to above contract Bryan proceeded with dispatch in his investigation and preparation and shortly filed amended pleadings of intervention in behalf of M. W. Harris, in a suit then pending in the District Court of Wood County in which various other litigants had joined issues over title to lots in the Hawkins townsite, including Lot No. 11. During the period from October 19, 1943, the date of above contract to the date of Minnie's death on July 16, 1946, Bryan diligently and continuously prosecuted this claim in which he resisted various moves of diverse claimants, filed various additional pleadings in which he sought a severance and pressed for a trial. He continued to so prosecute

this claim after Minnie's death. As a result of the action of the Court of Civil Appeals, Harris v. Wood County Oil Co., Tex.Civ.App., 222 S.W.2d 331, in his appeal from an adverse judgment rendered in a trial had on October 18, 1949, he succeeded in a recovery of a $^{5}\!/\!_{90}$ interest in the West half of Lot No. 11.

In June, 1949, Giles Harris was duly appointed guardian of the estate of his father, M. W. Harris, who had been adjudged a lunatic on February 21, 1948. In July, 1948, the probate court recognized and ratified the original power of attorney and assignment of interest and authorized Bryan to continue the prosecution of this claim in the name of this son as such guardian.

Under their third and fifth points, appellants assert that "the undisputed testimony adduced upon the trial shows that E. P. Bryan did not acquire any title to the interest prior to the death of Minnie Bryan on July 16, 1946," and "hence the court erred in holding that the $^{28}\!/\!_{90}$ interest was a part of the community estate of E. P. and Minnie Bryan." It is appellants' contention under testimony they introduced that in December, 1945, M. W. Harris became dissatisfied with the delay in obtaining a trial and that M. W. Harris both orally and by letter, in Bryan's words, "fired him"; that Bryan by letter dated December 18, 1945, agreed to terminate and cancel this contract. Bryan asserts he reentered the prosecution of the case in July, 1948, and prosecuted the claim to judgment under employment by the guardian under above mentioned probate order. The purported letter in which Bryan was "fired" was not produced with explanation that it had been lost. His agreement to its cancellation of the power of attorney was evidenced by a purported copy of a letter from Bryan to M. W. Harris.

From a mass of evidence, practically all documentary, the court found and filed extensive findings of fact and conclusions of law. The court found that Bryan was never in fact discharged as attorney under the original power of attorney and

same was not in fact cancelled; that the alleged reemployment of Bryan by the guardian did not occur; that Bryan never considered the power of attorney cancelled but to the contrary acted upon and performed under the same to the termination of the suit; and the origin, beginning and inception of the title of said Hawkins lot arose prior to the death of Minnie Hawkins. If this point be construed as an attack on the sufficiency of the evidence, the findings of fact upon which the court concluded the Hawkins lot to be community property is well supported by the evidence. The original power of attorney provided that M. W. Harris would reimburse Bryan for his necessary expenses in the prosecution of the suit. In December, 1949, Bryan filed an itemized claim for $523 expenses and secured approval and payment of same out of the probate court. After Minnie's death and prior to above mentioned probate court order of July, 1948, he continued with due diligence as before in the prosecution of the suit. The deed which Bryan received November 22, 1949, from the guardian, which was executed pursuant to an order of the probate court upon the application to that court for authority to execute the deed that conveyed to E. P. Bryan the one-half interest, were all prepared by Bryan, and each recites that he was entitled to same under and by virtue of his original power of attorney obtained October 19, 1943.

The court's findings of fact, above briefly detailed, which find ample support in the evidence, are legally sufficient to support the court's decree that this interest recovered was community property of E. P. and Minnie Bryan. Applicable to the court's findings that the origin, beginning and inception of title to this interest arose during the marriage of E. P. Bryan and Minnie Bryan, it is well settled in Texas in the application of the provisions of Art. 4619, R.C.S. of Texas that "The character of the title to property with reference to being separate or community depends upon the existence or nonexistence of the marriage at the time of the incipiency of the right by virtue of

which title is finally vested, and when title is so vested it relates back to that time." Jackson v. Jackson, Tex.Civ.App., 258 S. W. 231, 232. See Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328, 334, and authorities cited, wherein above rule is reaffirmed. Commissioner of Internal Revenue v. King, 5 Cir., 69 F.2d 639. Pursuant to an agreement of litigants the court allowed E. P. Bryan and wife ten thousand dollars as a reasonable cash fee for all legal services rendered by him since the death of Minnie Bryan in the prosecution of the Hawkins lot suit or otherwise rendered by him for the community estate since the death of Minnie. This allowance was accounted for in the adjustment of equities in the decree with respect to the sums of money decreed to the respective litigants.

Under the second point, appellants assert that the purported administration of E. P. Bryan of the community estate as survivor, is exclusive to the jurisdiction of the district court here invoked by appellees for an accounting and distribution of the community estate. In support of this claim, appellants quote extensively from Stone v. Jackson, 109 Tex. 385, 210 S.W. 953, 954, which in substance, holds: "It is equally clear that the husband is not only ordinarily entitled to the exclusive management and disposition of the property of the community estate during the marriage, but that such right or power of management and disposition, for the purpose of discharging the ordinary debts of the community estate, continues and is likewise exclusive, after the death of the wife; it having been determined that this right or power of the surviving husband overrides that of the administrator of the estate of the wife." See also 42 C.J.S., Husband and Wife, § 576, page 118. The decision sustained the validity of a sale theretofore made in order to secure the discharge of a community debt after the expiration of the period required by the statute of limitations to bar the debt. Above decision, and others of similar import, which involve Art. 3663, R.C.S. of Texas, deal with the validity of a conveyance theretofore executed by the survivor.

The rule sought to be invoked is inapplicable to the record involved here and the point is overruled. Title and possession of two parcels of land was put in issue, both under the pleadings and evidence. A further issue as to whether a certain tract was the community property of the first or second marriage or separate property was raised and adjudicated. Claims to personalty were in controversy. Jurisdiction to litigate title to lands is lodged in the district court and certainly not in E. B. Bryan as survivor of the community estate. If for no other reason, the alleged fraudulent acts "as against the heirs of the wife," mature the rights of such heirs to invoke the aid and jurisdiction of the district court. Stone v. Jackson, supra, 210 S.W. at page 955.

Trial was had on a third amended original petition, and a fourth amended original answer. During this process of pleading, appellants alleged the existence of various unsatisfied judgments, not necessary here to name other than Aetna. The latter who was impleaded by appellees answered and sought recovery on its asserted judgment against the estate. Appellants specially denied that any of the judgments including Aetna were then enforceable against him or against the community estate involved because as asserted by appellants each was then "barred, dormant, of no effect, more than ten years old and no valid execution had been issued within ten years after the date of the respective judgments and none could lawfully issue now." The trial court sustained this defense as to the dormancy of all the named judgments. The record evidence other than that as to Aetna sustains without controversy the asserted dormancy of the judgments.

During the period of more than five years that had elapsed since the death of his wife more than $19,000, had come into the possession of E. P. Bryan from the sale of timber, the bonus on the oil lease, the proceeds of oil produced and cash then on deposit in the banks at the time of Minnie's death. Of this sum he had expended $4,-200 for insurance premiums, burial and illness expense, taxes, auto expenses and repairs to and discharge of a lien against the

home. He also had advanced to appellees $1,125. No effort was made during this period to satisfy in whole or in part any of the judgments which he asserts are barred and dormant. Funds and realty were available to him for such purposes. Such have been secreted during the years. The record reflects all debts of the community except the judgments have been paid.

"The survivor · * * * for the purpose of adjusting debts and encumbrances, is entitled to possession of the whole for a reasonable time." 14 Tex.Jur., p. 593; Akin v. Jefferson, 65 Tex. 137, 144; Williams v. Hardie, 85 Tex. 499, 22 S.W. 399; Albrecht v. Albrecht, Tex.Civ.App., 35 S.W. 1076; Miller v. Miller, Tex.Civ.App., 78 S.W. 1085. We consider this period of 5½ years within which to administer this community estate and satisfy the alleged community debts was more than a reasonable time under the facts hereinabove detailed.

The findings of fact upon which the court adjudicated the equities between appellants and appellees find support in the evidence, and appear to be considerate to the claims of appellants. The attack upon such findings and adjudication involved in the other points presented are overruled.

In their contest to Aetna's action on its judgment, appellants Bryan assert here as in the trial court that the judgment was rendered on March 28, 1939, and more than ten years had elapsed at the time the first execution was issued on April 11, 1949, and if in fact the judgment was dated April 11, 1949, that the execution issued thereon is invalid because of the failure to comply with Rule 629, T.R.C.P.

On April 13, 1939, in cause No. 29640 EF styled First National Bank of Waco v. E. P. Bryan et al., on the docket of the 116th District Court of Dallas County, a judgment was rendered wherein it was "ordered, adjudged and decreed by the court that plaintiff, First National Bank of Waco, Texas, as guardian of the estate of Thomas Earl Gilbert, and for the use and benefit of said estate, do have and recover of and from E. P. Bryan, the Aetna Casualty and Surety Company, a corporation, and Georgia Ann Gilbert, as independent executrix of the estate of N. L. Gilbert, deceased, the sum of $2,500.00 together with interest on said sum from the date hereof at the rate of 6% per annum.

"And the court finding that the defendant, Aetna Casualty and Surety Company, upon the payment of the judgment rendered against it herein, is entitled to be subrogated to the rights of the plaintiff herein against the defendant, E. P. Bryan, and Georgia Ann Gilbert, as Independent Executrix of the estate of N. L. Gilbert, deceased, jointly and severally, and the said Aetna Casualty and Surety Company having in open court, simultaneously with the entry hereof, paid said plaintiff the full amount of the judgment against it, to-wit: $2500.00; it is therefore ordered, adjudged and decreed that the said defendant Aetna Casualty and Surety Company do have and recover of and from the defendant E. P. Bryan and Georgia Ann Gilbert, Independent Executrix of the Estate of N. L. Gilbert, deceased, jointly and severally, the sum of $2500.00, together with interest thereon from the date hereof at the rate of six per cent per annum, and for all costs in this behalf expended, for which let execution issue."

It is undisputed that the execution was issued on April 11, 1949, and the sheriff's return thereon was made on the same day, reading, "no property found in Dallas County belonging to defendant subject to execution."

The execution and the execution docket styled the case as "First National Bank of Waco v. E. P. Bryan et al., No. 29640 E-F." Omitting the itemized cost bill therein set out and certain formal parts, the execution so issued reads: "Execution. The State of Texas. To any sheriff or any constable within the State of Texas: Greeting: Whereas, on the 13th day of April, A.D. 1939 ——— corporation, grdn of Est. Thomas Earl Goforth, NCM. In that certain cause wherein First National Bank of Waco, is plaintiff and E. P. Bryan, Minnie L. Bryan, and the Aetna Casualty & Surety Company, a corporation, and Georgia Ann

Gilbert, and Bessie Strouss, a widow, are defendants, No. 29640-E-F, the said plaintiff First National Bank of Waco, recovered a judgment in the District Court of Dallas County, 116th Judicial District, State of Texas, against E. P. Bryan, The Aetna Casualty, Co., a corp., and Georgia Ann Gilbert, as Ind. Exec. Est. N. L. Gilbert, Dec'd jointly and severally, and whereas Aetna Cas. Co., a corp, having in open court paid said pltf. the judgment in amt of $2500.00, said Aetna Cas. Co., a corp is entitled to recover judgment against E. P. Bryan, and Georgia Ann Gilbert, Ind. Exec. for the sum of Twenty Five Hundred ......($2500.00) Dollars besides the Costs in that behalf expended, as of record is manifest in Book 'J' on Page 325 of the Record of said Court." "Therefore you are hereby commanded, that of the goods and chattels, lands and tenements of the said E. P. Bryan, you cause to be made the sum of Twenty Five Hundred ($2500.00) Dollars with interest thereon at the rate of 6 per cent per annum from April 13, 1939, together with the sum of $31.60 Dollars, costs of said suit and the further costs of executing this writ." "Herein fail not, and have you the said moneys, together with this writ, before said Court, at the Courthouse, in the City of Dallas, within ninety days from the date of this writ. Witness Bill Shaw Clerk of the District Court of Dallas County, Texas." The endorsement on the back of the execution is as follows: No. 29640-E-F—District Courts Dallas County —First National Bank of Waco vs. E. P. Bryan et al.—Execution—Judgment $2500.-00—Costs $31.60—Issued April 11, 1949. Bill Shaw, Clerk District Court."

In the initial state of the trial an agreed stipulation of certain documentary evidence was filed. This agreement sets out above judgment, which recites "that it was rendered on April 13, 1939." In their respective pleadings, all litigants alleged that the judgment was rendered April 13, 1939. The judgment asserted and introduced by Aetna bears date of April 13, 1939. The claim that the judgment bears date of March 28, 1939, is without support in the evidence.

Rule 629, supra, reads: "Requisites of Execution. The style of the execution shall be 'The State of Texas.' It shall be directed to any sheriff or any constable within the State of Texas. It shall be signed by the clerk or justice officially, and bear the seal of the court, if issued out of the district or county court, and shall require the officer to execute it according to its terms, and to make the costs which have been adjudged against the defendant in execution and the further costs of executing the writ. It shall describe the judgment, stating the court in which, and the time when, rendered, and the names of the parties in whose favor and against whom the judgment was rendered. A correct copy of the bill of costs taxed against the defendant in execution shall be attached to the writ. It shall require the officer to return it within thirty, sixty, or ninety days, as directed by the plaintiff or his attorney."

■ The execution above set out complies literally with the above requirements except as to the exact identity of the plaintiff who was awarded the $2500 judgment on its plea of subrogation. It is to be observed that Aetna Casualty and Surety Company, a corporation, recovered such judgment, being the item on which execution issued. The execution later describes such plaintiff as "Aetna Casualty Company, a corporation" and "Aetna Cas. Co. a Corp." Such minor weakness or irregularity in the name of such plaintiff in execution did not vitiate the validity of the execution. The defendant in execution, namely, E. P. Bryan, was definitely named. Applicable here and decisive against the attack here asserted by appellants Bryan, it was concluded in Patton v. Crisp & White, Tex. Civ.App., 11 S.W.2d 826, 828, w/r: "The recitation as to the parties plaintiff was sufficient to identify the judgment rendered with that referred to in the execution, which was the purpose contemplated in the requirement of the statute. Now, if the omission had related to the defendants in the case, it might present a different question, for in that case the defendants must be described with such certainty as to enable the officer to levy upon the property of those defendants, and, of course, the officer could not perform that duty without being informed as to who those defendants

744

were." See also Collins v. Hines, 100 Tex. 304, 99 S.W. 400.

■ A valid execution having been issued within ten years from the date of the judgment as prescribed under Art. 3773, R.C.S. of Texas, Vernon's Ann.Civ.St., the judgment had not become dormant but remained a valid subsisting unsatisfied claim against the community estate of E. P. and Minnie Bryan. Cox v. Nelson, Tex.Civ. App., 223 S.W.2d 84; Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206, 207.

The judgment so far as Aetna is denied a recovery is reversed and the cause remanded with instructions to the trial court to calculate the amount due on its judgment and enter a decree as a valid subsisting claim against E. P. Bryan, individually, and the community estate existing between said E. P. Bryan and Minnie Bryan and judgment in such sum so ascertained should be satisfied out of the properties of E. P. Bryan, individually, and the said community estate. The judgment in all other respects is affirmed.

Judgment reversed and remanded with instructions in part, and affirmed in part.