**MUSTANG DRILLING, INC.,
et al., Appellants,**

v.

**Sam B. COBB, Jr., Trustee,
et al., Appellees.**

**No. 6–90–063–CV.**

Court of Appeals of Texas,
Texarkana.

Aug. 6, 1991.

Rehearing Overruled Sept. 17, 1991.

J. Clay Gossett, Wilder, Wilder & Gossett, Henderson, for Brent Wilder.

Carl H. Barber, Bath, Turner & Barber, Henderson, for Texas Meridian Resources, et al.

Jack H. Harper, Ramey, Flock, Jeffus, Crawford, Tyler, for First City Texas–Tyler, N.A.

John H. Minton, Potter, Guinn, Minton & Roberts, Tyler, for Mustang Drilling, et al.

Deborah J. Race, Tyler, for Sam B. Cobb, et al.

Sam B. Cobb, Jr., Sam B. Cobb, Jr. & Associates, Tyler, pro se.

Allen D. Cummings, Cotton, Bledsoe, Tighe & Dawson, Midland, for Carlson Petroleum and Brazos Co.

Hoyt Johnston, Johnston & Johnston, Palestine, for Lillian Mathison, et al.

Robert Minton, Henderson, for Johnny Bagley, et al.

Beverly A. Beaird, Bradford R. Keitt, Donald and Barbara Brightwell, George E. Pickett, J.D. Hariston, Jerry L. Coker, Patricia Thompson, R.M. Ballenger and Scott Crawford, pro se.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

This is an appeal from a summary judgment for Sam B. Cobb, Jr. and others against Mustang Drilling, Inc. and others in a suit to interpret a 1933 partition judgment. The pivotal issue presented is whether the 1933 judgment partitioned both the surface and mineral interests in a tract of land, or only the surface. The trial court held that the judgment did not divide any mineral interest in the land. We determine otherwise and hold that the judgment divided both surface and mineral interests in the land that it involved.

John Pierson and wife, Lemmer Pierson, owned a 488.6 acre tract of land as community property. John Pierson died intestate in 1922. His eight children, Jim, Bryan, Joe, Robert, Mamie, Bessie, Ruby, and Lucy, inherited his one-half interest in the tract under the laws of descent and distribution, each receiving an undivided one-sixteenth interest. In 1925, one of the children, Jim Pierson, joined by his wife, conveyed his one-sixteenth interest in "all of the real and personal property and estate of our deceased father John Pierson" to Homer Harris, Jr., trustee for Mays & Harris, a partnership.

In January 1933, Bryan and Robert Pierson filed suit to partition the real and personal property which had belonged to John and Lemmer Pierson. They sued Lemmer Pierson, their mother, and the remaining children except Jim, naming instead Mays & Harris, who had purchased Jim's interest in the estate. The petition alleged that the suit was brought for the purpose of partitioning the *real and personal property* formerly belonging to John Pierson, deceased, and his wife, Lemmer. The petition did not refer to any other owner of an interest in the real property.

After a hearing, the court ordered that the estate be partitioned, and appointed three commissioners and a surveyor with directions to recommend a fair, just, and equitable partition of the land and premises in the proportions of one half to Lemmer and one sixteenth to each child and grantee. The commissioners reported to the

court on December 19, 1933, and recommended that the land be divided into nine specific tracts with the following acreage for each:

| Block | Party | Acres |
|---|---|---|
| Block 1 | Bob Pierson | 41 |
| Block 2 | Bryan Pierson | 30.5 |
| Block 3 | Mrs. Mamie Pierson Gill | 35.6 |
| Block 4 | Joe Pierson | 40 |
| Block 5 | Mrs. Lemmer Pierson | 140.7 |
| Block 6 | Lucy Pierson | 50 |
| Block 7 | Ruby Pierson Freeman | 50 |
| Block 8 | Bessie Pierson High | 50 |
| Block 9 | Jim Pierson (and his grantee Mays & Harris) | 50 |

On December 19, 1933, the trial court approved the commissioner's report, and those proceedings became final.

In September of 1930, three years before the partition, Lemmer Pierson conveyed her undivided mineral interest in the entire tract to H.C. Jones, and Joe Pierson conveyed his undivided mineral interest in the tract to R.B. Wherry.

Mustang Drilling acquired oil and gas leases covering the segregated blocks from the persons who had received those blocks in the partition, or from their successors in title. In 1988, it completed a producing gas well on block eight, and later it created three units including all the blocks.

Sam B. Cobb, Jr. obtained forty-eight oil and gas leases covering undivided interests in the entire 488.6 acre tract from parties purporting to be successors in interest to members of the Pierson family. Cobb's leases do not include a lease from his predecessor in interest, Robert Pierson, who received a block of land under the 1933 judgment.

Cobb sued Mustang Drilling and others seeking an accounting and, in effect, a declaratory judgment that the minerals in the 488.6 acre tract had not been partitioned.

The trial court granted Cobb's motion for summary judgment, finding that the 1933 judgment partitioned the surface estate of the land, but did not partition the mineral estate because all the mineral interest was not owned in common by the parties to that lawsuit. Presumably, the court based its holding on the fact that the mineral interest grantees of Lemmer and Joe Pierson, who owned nine sixteenths of the minerals in the tract, were not parties to the partition suit.

Mustang Drilling also had filed a motion for summary judgment alleging that the judgment in the 1933 partition suit was binding as to all parties to the action and that it covered both the surface and an undivided seven sixteenths of the minerals. The court denied the motion.

Because both parties moved for summary judgment, and the trial court granted one of them, we determine all questions presented by both motions. If error is found, and unless there is a question of fact, we render judgment for the party whose motion should have been granted. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex. 1988).

In determining this dispute we must answer two questions: (1) did the 1933 judgment include the mineral estate in the land described? and (2) if so, was it effective to partition the mineral interests of the owners who were parties to the suit, although some mineral owners were not parties? We answer both of these questions in the affirmative, primarily because we conclude that the 1933 judgment was a partition of the community estate of John and Lemmer Pierson, rather than a partition of the whole of the land.

■ With respect to the first question, we find that the 1933 judgment covered the

minerals as well as the surface. The judgment, as well as the pleadings and other papers in the record, refer to the "whole" of the described property, including all "the real and personal property," and refer to the parties as the sole owners of it. Nowhere is there an exception of the minerals. To say that the judgment did not affect the minerals belonging to the estate would be to apply a strained and unnatural construction of its terms and contradict its explicit language.

Cobb argues that the minerals were not covered, because all mineral owners were not parties, and the court therefore did not have the mineral estate before it. The answer to that argument is that all those owning shares of the estate of Joe and Lemmer Pierson, both as to surface and minerals, were parties, and it was the estate that was being partitioned.

This brings us to the second question: Was the judgment effective to partition the interests of the parties to it, although all the owners of interests in the land were not joined?

■ Cobb correctly asserts that an attempted partition of the whole of a tract of land, where all the owners are not joined as parties, is not binding even on those who are parties. *Ward v. Hinkle*, 117 Tex. 566, 8 S.W.2d 641 (1928); *McDade v. Vogel*, 173 S.W. 506 (Tex.Civ.App.—Galveston 1914, writ ref'd); *see also, Holloway v. McIlhenny Co.*, 77 Tex. 657, 14 S.W. 240 (1890); *Partin v. Holden*, 663 S.W.2d 883 (Tex. App.—Austin 1983, no writ); *Carper v. Halamicek*, 610 S.W.2d 556 (Tex.Civ. App.—Tyler 1980, writ ref'd n.r.e.); *Burkitt v. Broyles*, 340 S.W.2d 822 (Tex.Civ. App.—Waco 1960, writ ref'd n.r.e.); *Newcomb v. Blankenship*, 256 S.W.2d 700 (Tex. Civ.App.—Texarkana 1953, no writ); *Tidal Oil Co. v. Grays*, 54 S.W.2d 1043 (Tex.Civ. App.—Waco 1932), *certified questions answered on other grounds, Shell Petrole-*

*um Corp. v. Grays*, 122 Tex. 491, 62 S.W.2d 113 (Tex. Comm'n App.1933, opinion adopted); *Parker v. Scobee*, 36 S.W.2d 303 (Tex.Civ.App.—Waco 1931, no writ); *Maxwell's Unknown Heirs v. Bolding*, 11 S.W.2d 814 (Tex.Civ.App.—Waco 1928, no writ); *Tompkins v. Hooker*, 226 S.W. 1114 (Tex.Civ.App.—Texarkana 1920, no writ); *Keith v. Keith*, 39 Tex.Civ.App. 363, 87 S.W. 384 (1905, no writ); *Curtis v. Cockrell*, 9 Tex.Civ.App. 51, 28 S.W. 129 (1894, no writ). This rule is grounded in statutory law and has survived the amendments of our rules of procedure regarding necessary parties.[1] TEX.R.CIV.P. 757; *see Partin v. Holden, supra; Carper v. Halamicek, supra.*

■ The stated rule is not applicable here, however, because it does not apply to the partition of an *estate*. When partitioning an estate, only those persons interested in the estate, i.e., the owners of the undivided shares of the *estate* property, need be joined. TEX.REV.CIV.STAT.ANN. art. 3529, now TEX.PROB.CODE ANN. § 318 (Vernon 1980), and art. 3600, now TEX.PROB.CODE ANN. § 374 (Vernon 1980). The estate property may consist of an undivided interest in land. *Bryan v. Bryan*, 262 S.W.2d 736 (Tex.Civ.App.—Texarkana 1953, writ ref'd n.r.e.). If so, parties owning other interests in the land but who do not own a share of the estate's portion of the land need not be joined as parties. Indeed, they are not even proper parties to such an action. *Bryan v. Bryan, supra.* Thus, if all persons interested in the estate are parties to the partition action, the judgment is binding on all of them. *Bryan v. Bryan, supra.*

■ That the 1933 suit was one to partition an estate rather than the whole of the land is clearly indicated by the petition and the decree. For example, the petition alleges that there is *cash on deposit* belong-

---

1. Cases which appear to hold the contrary do not. Those cases simply apply the elementary rule that parties claiming *adverse interests* in land are not necessary parties to partition or trespass to try title suits between record owners, and are not bound by the judgment if they are not parties to the suit. *Garza v. Cavazos*, 148 Tex. 138, 221 S.W.2d 549 (1949); *Adams v. Duncan*, 147 Tex. 332, 215 S.W.2d 599 (1948); *Noble v. Meyers*, 76 Tex. 280, 13 S.W. 229 (1890); *Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank*, 763 S.W.2d 52 (Tex.App.—Dallas 1988, writ denied).

ing to the *community estate* of John Pierson and Lemmer Pierson, *"for which this suit is filed for purposes of partition"* (emphasis added); that the suit is brought to partition the *"real and personal property being the community property* of John Pierson, deceased, and his wife Lemmer Pierson" (emphasis added); that each party owns an undivided interest in the real estate and in the *personal property;* and that there is *money on hand belonging to the community estate* of Lemmer and John Pierson, and that the parties all own undivided interests in said community funds. The petition further alleges that John Pierson died intestate and there was no administration of his estate. The decree of partition recites that it sets aside to the respective parties their undivided interests in said property, "both real and personal."

In 1933, the partition and distribution of estates was ordinarily handled in the probate court, but where no administration was pending, jurisdiction was in the district court. *Elliott v. Elliott,* 208 S.W.2d 709 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.); *White v. White,* 149 S.W.2d 1031 (Tex.Civ.App.—Waco 1941, writ ref'd). As noted earlier, an essential allegation of a petition to give jurisdiction to the district court was that there was no administration pending on the estate. There was such an allegation in the 1933 petition, which further indicates that it was a partition of the Pierson community estate that was sought, not a partition of a specific tract of land. Such an allegation would be wholly out of place if the suit was merely one to judicially partition a tract of land. Taking this view of the case also explains why the purchasers of mineral interests from Lemmer and Jim Pierson were not parties to the action. They were not persons interested in the estate. They owned no interest in the community estate, and therefore they were not proper parties in a suit to partition the estate.

That the commissioners awarded Lemmer Pierson a smaller share of the surface than her undivided one-half interest (140.7 acres rather than 244.6 acres), and awarded her and Joe Pierson the estate's undivided share of the minerals under their respective blocks although they had previously sold their interests in the minerals, can be considered simply as the result of an adjustment in making a fair and equitable partition of the estate considering previous sales, advancements, and Lemmer Pierson's homestead rights. In any event, errors in the shares or interests awarded by the commissioners could not be attacked after their report was approved and the judgment was final. Since there was no appeal from the judgment, it could only be successfully attacked if it was rendered when the court had no jurisdiction of the subject matter.

For the reasons stated, the judgment of the trial court is reversed. Judgment is here rendered that the appellees take nothing against the appellants, and declaring that the judgment in Cause No. 139–A, styled Bob Pierson, et al v. Mrs. Lemmer Pierson, et al, in the Special District Court of Rusk County, Texas, effectively partitioned the surface and the mineral estate owned by the parties to said cause as decreed in said judgment. Appellants' counterclaim against Sam Cobb is remanded to the trial court for trial.

BLEIL, Justice, concurring.

I concur in the Court's decision reversing the trial court's judgment. However, I decline to join in the majority's characterization as "correct" Cobb's assertion that an attempted partition of the whole of a tract of land is not binding even on those who are parties to the partition. The numerous authorities cited fail to convince me. Rather, it is my view that as long as the pleadings or evidence fail to show that there are persons interested in the title that is the subject of a partition suit who have not been made parties, the proceeding may properly be prosecuted to a final decree and execution. *Noble v. Meyers,* 76 Tex. 280, 13 S.W. 229, 230 (1890); *see also Adams v. Duncan,* 147 Tex. 332, 215 S.W.2d 599, 605 (1948). If superior title exists in nonparties, their title remains unprejudiced, and the decree rendered is not binding on them. *Adams v. Duncan,* 215 S.W.2d at 605; *Beneficial Standard Life*

*Ins. Co. v. Trinity Nat'l Bank,* 763 S.W.2d 52, 55–56 (Tex.App.—Dallas 1988, writ denied).

Thus, an alternative basis on which to reverse the judgment is that Cobb, as a successor in interest to one of the parties to the 1933 partition suit, cannot now challenge the 1933 judgment.