ACCEPTED
12-14-250-cv
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/13/2015 1:47:20 PM
CATHY LUSK
CLERK

## CAUSE NO. 12-14-00250-CV

**IN THE
COURT OF APPEALS
TWELFTH COURT OF APPEALS
TYLER, TEXAS**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
1/13/2015 1:47:20 PM
CATHY S. LUSK
Clerk

**LARRY LONG AND WOODBINE PRODUCTION CORPORATION,
Appellants**

**V.**

**MIKEN OIL, INC. and MIKE TATE,**

**Appellees**

_____

**On Appeal from the
4th Judicial District Court of
Rusk County, Texas
The Honorable J. Clay Gossett, Presiding Judge**

_____

### BRIEF OF APPELLEES MIKEN OIL, INC. and MIKE TATE

Deborah J. Race
Texas Bar No. 16448700
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Drace@icklaw.com
Tel: (903) 561-1600
Fax: (903) 581-1071

ATTORNEY FOR APPELLEES

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 52.3(a), the following is a complete list of all parties and the names and addresses of all counsel.

Appellants:                          Larry T. Long
                                     Woodbine Production Corporation

Appellate Counsel:                   F. Franklin Honea
                                     frank@honealaw.com
                                     The Law Offices of F. Franklin Honea
                                     5949 Sherry Lane, Suite 1700
                                     Dallas, Texas 75225

Trial Counsel:                       Ron Adkison
                                     ron@adkisonlawfirm.com
                                     The Adkison Law Firm
                                     300 W. Main Street
                                     Henderson, Texas 75652-3109

                                     Brent Bull
                                     Bull & Barrett, LLP
                                     Energy Centre
                                     1127 Judson Road, Suite 120
                                     Longview, Texas 75601

Appellees:                           Miken Oil, Inc.
                                     Mike Tate

Appellate Counsel:                   Deborah J. Race
                                     Drace@icklaw.com
                                     Ireland, Carroll & Kelley, P.C.
                                     6101 S. Broadway, Suite 500
                                     Tyler, Texas 75703

Trial Counsel:                                 Charles H. Clark
CHC@charlesclarklaw.com
Law Offices of Charles H. Clark
P. O. Box 98
Tyler, Texas 75710

Bruce A. Smith
Ward & Smith
P. O. Box 1231
Longview, Texas 75606-1231

Clay Wilder
cwilder@suddenlinkmail.com
Wilder & Wilder, P.C.
200 North Main Street
P. O. Box 1108
Henderson, Texas 75653-1108

# TABLE OF CONTENTS

Identity of Parties and Counsel ............................................................................ ii

Table of Contentents ....................................................................................... iv

Index of Authorities ......................................................................................... vii

Statement Regarding Oral Argument ........................................................... xii

Reply Issues ...................................................................................................... xii

Statement of Facts ............................................................................................ 1

Summary of the Argument .............................................................................. 13

Argument and Authorities .............................................................................. 19

      Reply to Issue 1 ........................................................................................ 19

The Court had jurisdiction and õprudential powerö to order the mineral interests sold and the proceeds partitioned as requested by both sides.

      Reply to Issue 2 ........................................................................................ 29

Tate and Miken Oil properly pled an action in partition of these mineral interests under Rule 756 and the court was correct to deny Long and Woodbineøs special exceptions on this ground.

      Reply to Issues 3, 4 and 5 ................................................................. 32, 33

There was sufficient evidence to support the trial courtøs order.

      Reply to Issue 3

The court correctly ordered the mineral interests jointly owned by the parties sold as requested by both sides. It was undisputed that Tate and Miken owned an interest and the order correctly reflected that it was partitioning all of the property jointly owned by the parties.

Reply to Issue 4

There was sufficient evidence to support the court's order as to Tate and Miken.

Reply to Issue 5

Long and Woodbine pled and stipulated that the mineral interests were not subject to partition in kind and agreed that they should be sold.

Reply to Issue 6 ....................................................................................37

The court properly appointed a qualified receiver to handle the sale of the jointly owned mineral interests.

Reply to Issues 7 and 8 ...........................................................................40

Reply to Issue 7

The court proceeded properly and the parties stipulated that no issues would be waived pending the second phase of the partition proceeding.

Reply to Issue 8

The court entered its order after conducting a proper hearing with all parties and after the parties agreed on the record that the interests be sold and the money deposited into the registry of the court; further, the court and the parties agreed on the record that Long and Woodbine were not waiving any claims for contribution.

Reply to Issue 9 ....................................................................................46

The court conducted a proper hearing with all parties before entering the order

Conclusion and Prayer for Relief ...................................................................47, 48

Certificate of Compliance .................................................................................48

Certificate of Service....... ................................................................................49

Appendix

      App. 1      Defendant Long's Original Counterclaim and Plea in
                    Intervention by Woodbine Production Company dated
                    September 9, 2013

      App 2       Defendant Larry Long's Second Amended Original
                    Answer dated October 9, 2013

# INDEX OF AUTHORITIES

## Cases

Aldous v. Bruss, 405 S.W.3d 847
(Tex. App.ô Houston [14th Dist.] 2013, no pet.) ...........................15, 29, 30

Azios v. Slot, 653 S.W.2d 111
(Tex.App.-Austin 1983, no pet.)................................................................3

Baylor Univ. v. Sonnichsen,
221 S.W.3d 632 (Tex. 2007)...................................................................29

BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789 (Tex. 2002) ....................................................................24

Brooks v. Northglen Assøn,
141 S.W.3d 158 (Tex. 2004)........................................................14, 22, 23

Carper v. Halamicek, 610 S.W.2d 556
(Tex. Civ. App.--Tyler 1980, writ ref'd n.r.e.)................................23, 24, 27

City of Keller v. Wilson,
168 S.W.3d 802 (Tex. 2005)...................................................................33

Clanton v. Clark,
639 S.W.2d 929 (Tex. 1982).............................................................17, 32

Clegg v. Clark, 405 S.W.2d 697
(Tex. Civ. App. -- Waco 1966, writ refød) .................................................27

Cooper v. Texas Gulf Indus., Inc.,
513 S.W.2d 200 (Tex. 1974).................................................................27

DART v. Edwards, 171 S.W.3d 584
(Tex. App.--Dallas 2005, pet. denied) .....................................................30

vii

Davis v. Davis, 2013 Tex.App. LEXIS 5525
(Tex.App.ô Dallas 2013, no pet.)...................................................17, 39

Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985).................................13, 20, 31

Dukes v. Migura, 758 S.W.2d 831,
(Tex.App.ô Corpus Christi 1988), revød on other grounds,
770 S.W.2d 568 (Tex. 1989)....................................................25

Ellis v. First City Natød Bank, 864 S.W.2d 555
(Tex.App.ô Tyler 1993, no pet.)....................................................42

Friesenhahn v. Ryan,
960 S.W.2d 656 (Tex. 1998)....................................................29

Gilmer Indep. Sch. Dist. v. Dorfman, 156 S.W.3d 586
(Tex. App.- Tyler 2003, no pet.)....................................................25

Green v. Doakes, 593 S.W.2d 762
(Tex.Civ.App. ó Houston [1st Dist.] 1979, no writ).........................16, 37, 39

Guerro v. Salinas, 2006 Tex. App.
LEXIS 8562, Tex. App. ó Corpus Christi 2006, no pet.).......................30, 31

Hanrick v. Gurley, 93 Tex. 458,
54 S.W. 347 (1899)....................................................41

Hoover v. Materi,
515 S.W.2d 406 (Tex.Civ.App. ó El Paso 1974,
writ refød n.r.e.) ....................................................44, 45

Hudson v. Sweatt, 2014 Tex. App.
LEXIS 12660 (Tex.App.ô El Paso Nov. 21, 2014)................................14, 22

In re Davis, 418 S.W.3d 684
(Tex.App.ô Texarkana 2012, orig. pro.)......................................................39

IKB Industries v. Pro-Line Corp.,
938 S.W.2d 440 (Tex. 1997)......................................................................34

James v. Underwood, 438 S.W.3d 704
(Tex.App.ô Houston [1st Dist.] 2014, no pet.)..............................................30

Johnson v. Fourth Court of Appeals,
700 S.W.2d 916 (Tex. 1985).................................................................13, 20

K.C. Roofing Co., Inc. v. Abundis,
940 S.W.2d 375 (Tex.App -- San Antonio 1997,
writ denied) ............................................................................................34

Kubena v. Hatch,
144 Tex. 627, 193 S.W.2d 175 (1946) .......................................................26

Kutch v. Del Mar College,
831 S.W.2d 506 (Tex. App.--Corpus Christi 1992,
no writ)...................................................................................................30

Love v. Woerndell,
737 S.W.2d 50 (Tex. App. ó San Antonio 1987, writ denied).....................25

Maritime Overseas Corp. v. Ellis,
971 S.W.2d 402 (Tex. 1998) .....................................................................33

Maverick v. Burney,
88 Tex. 560, 32 S.W. 512 (1895) ..............................................................22

Mercedes-Benz Credit Corp. v. Rhyne,
    925 S.W.2d 664 (Tex. 1996).....................................................................46

Mulvey v. Mobil Producing Tex. & N.M., Inc.,
    147 S.W.3d 594 (Tex. App.--Corpus Christi 2004,
    pet. denied) .................................................................................................30

Mustang Drilling, Inc. v. Cobb,
    815 S.W.2d 774 (Tex.App.ô Texarkana 1991,
    writ denied) ................................................................................................26

New v. First Natøl Bank,
    476 S.W.2d 121 (Tex.Civ.App. ó El Paso 1972,
    no writ) .......................................................................................................37

Ortiz v. Jones,
    917 S.W.2d 770 (Tex. 1996)......................................................................33

Puntarelli v. Peterson,
    405 S.W.3d 131
    (Tex. App. ó Houston [1st Dist.] 2013, no pet.) .........................19, 20, 46, 47

Shepherd v. Ledford,
    962 S.W.2d 28 (Tex. 1988) .......................................................................36

State v.Blair,
    629 S.W.2d 148 (Tex. App. -- Dallas, aff'd, 640 S.W.2d 867
    (Tex.1982))..................................................................................................26

Texas Oil & Gas Corp. v. Ostrom,
    638 S.W.2d 231(Tex.App.ô Tyler 1982,
    writ refød n.r.e.)......................................................................................27, 28

Veal v. Thomason,
    138 Tex. 341, 159 S.W.2d 472 (1942)................................................27, 28

x

Ward v. Hinkle,
117 Tex. 566, 8 S.W.2d 641 (1928) ...............................................21, 22, 27

Wyatt v. Shaw Plumbing Co.,
760 S.W.2d 245 (Tex. 1988) ...............................................13, 20

## Rules

Tex. R. Civ. P. 39 ...............................................8, 20, 27

Tex. R. Civ. P. 91 ...............................................29

Tex. R. Civ. P. 299a...............................................16, 34

Tex. R. Civ. P. 756 ...............................................iv, 29

Tex. R. Civ. P. 757 ...............................................9, 20, 21

Tex. R. Civ. P. 770 ...............................................17, 38, 39

Tex. R. Civ. P. 760 ...............................................18, 40

Tex. R. App. P. 33.1(a)(1) ...............................................17, 39

## Codes

Texas Civil Practice & Remedies Code §3.23 (1981) ...............................................27

Texas Civil Practice & Remedies Code §§ 64.022 and 64.023 ...............................................39

## Other

68 C.J.S., Partition, § 144b, p. 239 ...............................................45

Texas Constitution, Article I, Sec. 15 and Article V, Sec. 10 ...............................................2, 3

**STATEMENT REGARDING ORAL ARGUMENT**

Tate and Miken request oral argument in this appeal. The record is lengthy and they believe oral argument and the ability to question counsel will assist the Court in deciding the issues raised in this appeal.

**REPLY ISSUES**

Reply to Issue 1 ........................................................................19

The Court had jurisdiction and õprudential powerö to order the mineral interests sold and the proceeds partitioned as requested by both sides.

Reply to Issue 2 ........................................................................29

Tate and Miken Oil properly pled an action in partition of these mineral interests under Rule 756 and the court was correct to deny Long and Woodbineøs special exceptions on this ground.

Reply to Issues 3, 4 and 5 ...................................................32, 33

There was sufficient evidence to support the trial courtøs order.

Reply to Issue 3

The court correctly ordered the mineral interests jointly owned by the parties sold as requested by both sides. It was undisputed that Tate and Miken owned an interest and the order correctly reflected that it was partitioning all of the property jointly owned by the parties.

Reply to Issue 4

There was sufficient evidence to support the courtøs order as to Tate and Miken.

Reply to Issue 5

Long and Woodbine pled and stipulated that the mineral interests were not subject to partition in kind and agreed that they should be sold.

Reply to Issue 6 ...................................................................................37

The court properly appointed a qualified receiver to handle the sale of the jointly owned mineral interests.

Reply to Issues 7 and 8 ........................................................................40

Reply to Issue 7

The court proceeded properly and the parties stipulated that no issues would be waived pending the second phase of the partition proceedings.

Reply to Issue 8

The court entered its order after conducting a proper hearing with all parties and after the parties agreed on the record that the interests be sold and the money deposited into the registry of the court; further, the court and the parties agreed on the record that Long and Woodbine were not waiving any claims for contribution.

Reply to Issue 9 ...................................................................................46

The court conducted a proper hearing with all parties before entering the order.

**STATEMENT OF FACTS**

The most critical aspect of the procedural and factual history of this case is that the parties agreed to the procedure implemented by the trial court. (RR I p.11, ll 16-25; p. 12 1-5; p. 16, ll 18-25; p. 17 ll 1-12; p. 18 ll 24-25; p. 19 ll 1-8; p. 20 ll 1-8; RR II p. 13  ll 8-14; p. 14 ll 17-20;  p. 15 ll 1-3, 20-25; p. 16 ll 1-25; p. 17 ll 20-24; p. 22 ll 5-21; p. 23 ll 11-12). Tate and Miken[1] filed suit in Gregg County against Larry Long seeking, among other relief, a partition of certain oil and gas properties, including the Young and Thrash leases located in Rusk County and jointly owned by the parties.  (CR I 7). The defendant filed a motion to transfer venue and the Gregg County court agreed that venue was mandatory in Rusk County as to all "claims pertaining to the Young and Thrash leases," and ordered those matters transferred. (C.R.I  25). On September 4, 2013, Tate filed a request for hearing asking the Court to determine whether the Thrash and Young leases were susceptible to partition in kind. (C.R. I 26).

Long filed a counterclaim and Woodbine Production Company filed a plea in intervention on September 9, 2014.[2] (CR I 28).  Therein, Long and Woodbine expressly admitted that "This court has jurisdiction and venue over the subject matter and the persons named herein." (CR I 28). Apparently Woodbine had filed claims against Tate, which the Rusk County court had transferred back to Gregg

---

[1] Tate and Miken will be referred to individually as necessary or collectively as Tate.
[2] Long and Woodbine will be referred to individually as necessary or collectively as Long.

1

County, but Woodbine explained that it was also filing the claims in Rusk County "inasmuch as the assertion of its claims must be made in this partition action." (CR I 30). The pleading continued "The original filing of this action in Gregg County preceded the filing of Woodbine's original action which the Court transferred." (CR I 30). The pleading explained that Tate and Long had acquired their interests in 2000 and that Woodbine was the operator of the Young and Thrash leases. (CR I 30-31). The pleading sought a declaration of cotenancy, reimbursement and a creation of an equitable lien. (CR I 32-33).

On that same day, Long and Woodbine also filed a response to Tate's request for a hearing and a plea in abatement. (CR I 114). Therein, they pled that the court had to first decide whether the property was susceptible to partition in kind. (CR I 115). They then stated "There is significant dispute whether either of the two oil and gas leases are partitionable in kind." (CR I 116). They contended that "While jointly owned lands which are unexplored and undeveloped for minerals are usually partitionable in kind because it is presumed to have an equal distribution of potential minerals in every part of the property, known mineral interests are usually not partitionable in kind." (CR I 116). They requested discovery to determine whether the properties could be partitioned in kind. (CR I 117). They also urged that: "Finally, a partition action is one in which the trial by jury must be recognized. Texas Constitution, Article I, Sec. 15 and Article V, Sec.

10 apply to partition actions. In *Azios* v. *Slot,* 653 S.W.2d 111 (Tex.App.-Austin 1983, no pet.), that court held that the factual dispute regarding whether jointly owned land was or was not partitionable in kind should have been tried before a jury." (CR I 119).

Long and Woodbine also argued that by their suit Tate and Miken sought to partition "only the interests of Plaintiffs and Defendant, leaving out the other owners of the leaseholds." (CR I 119). They asked that others owning an interest in the minerals be joined as well. (CR I 120). Tate filed a response to Long and Woodbine's counterclaim and also a response to the plea in intervention. (CR I 125, 127). Tate explained that "Woodbine now attempts to file an Intervention in this lawsuit, which is essentially the same lawsuit it filed under Cause No. 2013-102." (CR I 127). Tate urged that "Every issue raised by Woodbine in its Plea of Intervention is now before the Court in Gregg County, Texas. Woodbine does not own any interest in the real property which is the subject of this lawsuit. Its presence before this Court is not required for this Court to determine the issues presented to it in this lawsuit which involves the partition of real estate located in Rusk County, Texas." *Id.* Thereafter, the court entered an order setting the hearing. (CR I 130).

Next Long and Woodbine filed a motion asking the court to reset the hearing on the property's susceptibility to partition in kind to allow the court to consider

Long and Woodbine's plea in abatement and the need for additional parties and to permit discovery on this issue. (CR I 131). Therein, they urged that the Court also needed to consider Woodbine's argument that Tate was indebted to it and that the partition would need to address that issue. (CR I 136). They argued that Tate had not pled a proper partition and needed to replead. (CR I 137). Long and Woodbine then filed Amended Special Exceptions arguing that plaintiffs were trying to partition only a part of an undivided interest in oil and gas, namely $7/8^{th}$ of the working interest. (CR I 143). Woodbine also filed a response to Tate's motion to strike its intervention, admitting that its Gregg County suit was identical, but arguing that it was also a necessary party to the partition action. (CR I 164). It urged that its claim for contribution had to be determined in the partition suit. (CR I 173, 181).

On that same day, Long filed an amended answer. (CR I 186). Therein, Long asserted that "Although addressed separately in Defendant's Motion to Abate, Plea in Abatement and Supplemental Plea in Abatement, the lack of necessary parties in this case is a jurisdictional issue because the non-party, cotenant leasehold interest owners have an immediate right of possession in the entire undivided leasehold estate." (CR I 187). Long also argued that the interests were not susceptible to being partitioned in kind. (CR I 188). Long represented, "As there is no reasonable way to determine how to partition in kind the minerals at a

4

reasonable cost, **the lands should be partitioned by sale**, rather than in kind, and the proceeds distributed according to each party's interest." (CR I 188, emphasis added). Long also complained that Tate had failed to join the owners of the outstanding 1/8th working interest.  (CR I 189). Long then filed a Supplemental Plea in Abatement and Supporting Brief.  (CR I 193).

On October 17, 2013, the court held a hearing on Plaintiff's Motion to Transfer Venue or Motion to Strike, Plaintiff's Motion to Strike and Intervention, and Long and Woodbine's Special Exception and Plea in Abatement. (RR 1 3 ll 12-16). Tate's counsel began with an explanation of the history of the property and noted that in their answer, the defendants had argued that the land could not be partitioned in kind, but should instead be sold.  (RR 1 5). He explained that there was no dispute that the parties together owned 7/8th of the working interest. *Id.* He next pointed out that Long had advised that he would want a jury trial if the interests were to be partitioned in kind.  (RR 1 4 ll 4-16).  He then stated, "But there's a way to avoid that, and we're going to suggest it to the Court, because the defendants have already suggested it; they pled it twice. They want to sell the properties and divide the proceeds, and we've – Clay Wilder and I have talked with our client, and we've gone over this matter, and we're totally in agreement with that." (RR 1 6 ll 17-22). He explained that this would eliminate the need for the jury trial, expedite matters and be an efficient and economical way to resolve the

5

case. (RR 1 7 ll 1-6). Counsel then stipulated that the property should be sold. (RR 1 7 ll 9-10). Counsel explained that Tate had already deposited $125,000 into the registry of the court for any money he owed Long. (RR 1 8 ll 6-9).

The Court then asked if the parties were in agreement that the property was not subject to being partitioned in kind. (RR 1 11 ll 16-17). Long's counsel responded that "We agree that that is not susceptible to being partitioned in kind." *Id.*, ll 18-19. However he expressed concern about the timing. *Id.*, ll 21-22. The court then confirmed that while he understood those concerns, "the parties are therefore in agreement that at some point in time that the property will need to be sold; therefore, it just appears to me then the questions before the Court would be who owns – number one, if all parties are necessarily joined in the lawsuit, and then the next step would be who owns what and who is owed what." *Id.*, ll 23-25; RR 1 12 ll 1-5.

The court then discussed the joinder of parties. The court asked if it had to make that determination before it ordered the sale. (RR 1 15, ll 24-25). Long replied with concerns about liens and potential claims. (RR 1 16-17). And Tate represented he agreed. (RR 1 17 ll 6-7). Long and Woodbine's counsel then stated, "I think we have reserved Woodbine's position by filing." (RR 1 17 ll 9-10). To which the court replied, "Right, And the Court would so order that you have." *Id.*, ll 11-12. The court also stated, "Well now, that's why I'm agreeing on

6

what the agreement is. I mean, I think – and y'all may not be in agreement on this, so I think that the Court needs to make a determination of whether or not there needs to be any additional parties added to the lawsuit, And then number two, then the Court could order the property sold, and the Court then determines – and I may have this out of order – then determines any issues of offsets, liens, ownership, contributions, who owes – who is owed what money." (RR 1 18 ll 24-25; 19 ll 1-7). To which Long and Woodbine's counsel replied, "Who gets what." (RR 19 l 8).

The Court next advised that its dispute at that time was "the party issue, and the additional other lawsuits." (RR 1 ll 23-24). The Court then stated, "And I would be at this point in time to be inclined, and I would think ya'll would hopefully want to get all of that resolved before this Court, if possible." *Id.*, ll25; RR 1 20 ll 1-2. Long and Woodbine's counsel replied, "Yes, sir." (RR 1 20, ll 3). The Court then stated, "If possible. Okay. Everybody is shaking their head yes for the record." *Id.*, ll 4-5. The court then summarized, "All right. Let's go through this. The parties, that's the first dominant issue, to make sure we have all parties before the Court with affidavits filed before the Court under oath with any interest either party might have, know of, et cetera. The Court will rule upon necessary parties at that time." (RR 1 21, ll 6-11). The Court concluded, "All right. So we determine the parties, make sure we have all parties before the Court. At that time,

subject to whatever interest they might have or whatever arguments they might have, order the property sold, and then determine ownership of the property." (RR 1 22 ll 10-14). The Court then granted the abatement in order to determine the party question. (RR 1 24 ll 3-4). Counsel for Long and Woodbine confirmed this was the order of the Court. *Id.*, ll 5-7. The Court concluded, "Yes. That was the effect of the order. But that we have these other issues resolved before the – for the Court's determinations. All right. Thank you, gentlemen." (*Id.*, ll 7-10).

Subsequent to this hearing Tate filed a brief supporting the position that the joinder of additional owners was not necessary. (CR II 213). Tate explained that Bonanza Production Company had assigned Tate and Long all of its $7/8^{th}$ interest in the Thrash and Young leases in 2000. (CR II 214). Tate noted that the other $1/8^{th}$ working interest was owned by other entities who were not a party to the suit. *Id.* Tate explained that in 1993, Granite Oil had sold and assigned all of its interest, the $7/8^{th}$ working interest, in these leases to Bonanza. *Id.* Tate noted that the outstanding $1/8^{th}$ interest was not involved in either the assignment to or from Bonanza. *Id.* Tate then presented argument and authorities supporting the position that the joinder of the outstanding $1/8^{th}$ interest was not necessary for the sale of Tate and Long's $7/8^{th}$, including that joinder was not necessary under Rule 39. (CR II 216). Tate presented a summary of its argument in the brief. (CR II 224-225).

Tate also attached an affidavit of a landman, and various other supporting documents. (CR II 227-85).

Long filed a reply brief in which he urged that joinder was mandatory under Rule 757 governing partition. Tex. R. Civ. P. 757. (CR II 298). Long disagreed with Tate that because the sale only involved the $7/8^{th}$ owned jointly by Tate and Long, it was not necessary to join the owners of the other $1/8^{th}$. (CR II 302). Long also filed notices of liens and other burdens it claimed affected the Young and Thrash leases. (CR Supp I, II and III).

The Court issued a letter ruling on December 18, 2013, denying Long's plea in abatement and a corrected letter ruling on January 8, 2014. (CR II 361-62). The Court then issued an order asking the parties to confer and see if they could reach an agreement regarding its order. (CR II 363).

The record next contains Tate's motion for protective order. (CR III, IV & V). Therein, Tate complained about the massive volume of discovery it had received from Woodbine. (CR III 371). Tate explained that the only thing pending before the Court was the sale of the Thrash and Young leases. *Id.* Tate also wrote: "Defendants have agreed in open court that the properties could not be partitioned in kind, and both Plaintiffs and Defendants and Intervenor have agreed in statements to this Court that the properties should be partitioned by sale." Tate

explained that most of the discovery it had received was identical to discovery served in the Gregg County suit. (CR III 372).

Woodbine responded that the court first needed to determine the burdens and liens against either party's respective interest. (CR VI 1063-64). Woodbine also filed a Motion to Compel. (CR VI 1101). The court set the matter for hearing on May 1, 2014. (CR VI 1114). The parties and counsel appeared at the hearing, and agreed to take up both the protective order and motion to compel. (RR 2 3 ll 15-16). The parties ended up agreeing to be bound by the same discovery in both suits. (RR 2 9 ll 7-14, 24-25; 11 ll 2-9).

Next, the parties again addressed the procedure to be followed in the case. Tate represented that the parties had agreed that their interests should be sold and that the court then place the funds into the registry of the court while the question of any claims was sorted out. (RR 2 13 ll 8-19). Long and Woodbine expressed concerns that they not waive any rights, stating "if we could have an agreement that's somewhat procedurally and substantively binding by agreeing to that method to do it that we're no waiving our claim for contribution. Because the cases say – otherwise the cases are going to hold that we do, so that – I mean, some way procedurally we've got to get past that, or we're going to have waived or we're at risk of having waived our claim for contribution." (RR 2 14 ll 17-24). Tate replied that he didn't think there was dispute; that the interests needed to be sold,

the funds deposited with the court and the court then determine if there was any claim of contribution that would affect the distribution of the funds. (RR 2 15 1-23). Tate concluded, "So they're not going to be prejudiced or waive anything, because all of these claims are pending over here. And you're not – and the Court is not going to distribute any funds until the Court is satisfied that all of these issues have been resolved and any claim that one side wants to make against the other is not affecting how this is to be – how this money is to be distributed." (RR 2 16 ll 2-8).

Long responded that "the stipulation that we made is clear …." (R 2 16 ll 19-20). Long repeated the concern that there was authority that the court must make the determination as to claims at the first hearing and it was concerned that it not waive that right. Long stated: "So the language of the Court makes it clear that that's not just a straight partition action where you're going to parcel it out and sell it, but it goes to the question also of contribution claims, and the Court assumes jurisdiction over it under our agreement." (R 2 17, ll 7-12).

The court agreed, stating, "All right. So then the order of the Court would be that you're not waiving any rights for contributions under the statute because you're allowing the case – the property to be sold first without making that determination prior to the sale of the property." (RR 2 17 ll 20-14). Long repeated concerns about waiver, advising the court it did not want to "step into this trap."

11

(RR 2 19 ll 3-10). Tate assured the court that it had stipulated they were not waiving anything. (RR 2 22 ll 16-21). Tate also stated, "But here's the thing about continuing – and first off, you know, what counsel over here needs to tell the Court is why they changed their minds." (RR 2 22 ll 19-21). To which Long responded, "We haven't." (RR 2 22 l 22). Long continued, "Well wait a minute. I think we agreed to sell the lease and split the money." (RR 2 23 ll 11-12). Long expressed concerns about the timing and waiver. Tate replied, "I just want to make sure our position is clear. As far as we're arguing the timing and the urging that the leases be sold sooner rather than later, we're not doing so to try to trick or to lead counsel into some trap. If there's evidence of that, Mr. Clark and I both have said on the record today that we've stipulated that whatever claims they have of any kind or character, we will say that they can make those claims against these funds. We are not trying to say or argue that they would have waived anything, and we're willing to say that and we do say that at this time." (RR 2 27 ll 2-12).

Finally, Long expressed concerns about whether this argument was jurisdictional, stating "The other thing that's bothering me is if -- something jurisdictional can't be waived, so the question is, is that issue jurisdictional or not." (CR 2 28 ll 6-8). The court instructed the parties to submit briefs on that issue within a week and promised to take a look at those. (CR 2 28 ll 13-14). No such briefs are contained in the Clerk's Record.

On July 31, 2014, the court entered an order finding the property not susceptible to partition in kind, appointing a receiver and ordering the property sold. The order expressly stated: "It Is Therefore Ordered that the above-described property be sold and that the proceeds or [sic] such sale be distributed among the above-listed co-owners in accordance with further orders of this court." (CR VI 1116). No findings of fact were requested or filed. Long and Woodbine then filed a Notice of Appeal. (CR VI 1127).

## SUMMARY OF THE ARGUMENT

In the first issue, Long argues that the court's failure to join the owners of the other 1/8th interest was jurisdictional or in the alternative that the court lacked prudential power to proceed. (Long brief at 2). As a result, Long claims the court erred in denying Long's plea in abatement. (Long brief at 1, 11, 13). An appellate court reviews a ruling on a plea in abatement under an abuse of discretion standard. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988). A court abuses its discretion when it acts so arbitrarily or unreasonably as to amount to a clear and prejudicial error of law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985). A court acts unreasonably when it acts without reference to any guiding rules of principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1995).

13

With respect to Long's jurisdictional argument, the parties agreed the court had subject matter jurisdiction and it did. (CR I 28; RR 2 17 ll 7-12). Even had the court needed to join additional parties, which it did not, the failure to join all necessary parties to a partition does not deprive the court of subject matter jurisdiction. *See Hudson v. Sweatt*, 2014 Tex.App. LEXIS 12660 (Tex.App. – El Paso, Nov. 21, 2014). Instead, under Rule 39, the trial court is to decide whether it has the authority to proceed and if it does proceed, the judgment is final as to the parties before the court. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 192 (Tex. 2004).

Here, it was not necessary to join the owners of the other 1/8th interest. Their interests would not be affected by this suit. Long contends that Rule 757 required the joinder, but that rule requires that the clerk issue citation for each joint owner or claimant. Long and Tate were the only joint owners or claimants of the 7/8th interest to be partitioned. No one else had an interest in the property sought to partitioned and no one else would be affected by the decision.

Long acknowledges that under *Brooks*, the trial court's decision might not be jurisdictional and argues that in the alternative, this court review the complaint under a "prudential power" standard of review. (Long brief at 20). As seen above, this issue would be reviewed under an abuse of discretion standard. The trial court did not abuse its discretion in proceeding and acted prudently in doing so. The

court considered all the arguments of the parties and received briefing on the issue. (CR II 213, 296). And even more importantly, it proceeded according to the agreements and stipulations of the parties. . (RR I p.11, ll 16-25; p. 12 1-5; p. 16, ll 18-25; p. 17 ll 1-12; p. 18 ll 24-25; p. 19 ll 1-8; p. 20 ll 1-8; RR II p. 13  ll 8-14; p. 14 ll 17-20;  p. 15 ll 1-3, 20-25; p. 16 ll 1-25; p. 17 ll 20-24; p. 22 ll 5-21; p. 23 ll 11-12).

In Issue 2, Long complains that the court erred in denying Long's Special Exceptions. (Long brief at 2, 11, 33).  As with Issue 1, this issue is also reviewed for an abuse of discretion.  *See Aldous v. Bruss*, 405 S.W.3d 847, 857 (Tex.App. – Houston [14th Dist.] 2013, no pet.). While the court held a hearing on the special exceptions, there is no ruling in the record.  Long argues that the ruling may be implied, but the record does not support that.  As the conclusion of the hearing the court set out the procedure it would follow according to the parties' representations. (RR 1 21 ll 6-11). The court held a subsequent hearing on several matters and again set out the procedure to be followed.  (RR 2 23-25). It is doubtful that Long preserved this complaint, but even it was preserved, the complaint is without merit. The court did not abuse its discretion.

By the next three issues, Long attacks the sufficiency of the evidence to support the ownership by the parties (Issue 3), the entry of the order (Issue 4) and the decision that the interests were not susceptible to partition in kind (Issue 5).

(Long brief at 3-4, 12, 35). Long begins by attacking the trial courts "findings and conclusions." (Long brief at 35). The problem with this argument is no findings were requested or filed. Recitations in the judgment are not findings. Tex R.Civ.P. 299a.

Furthermore, even if there were such findings, Long's arguments have no merit. There was more than sufficient evidence, including the stipulations of the parties, to support the trial court's order. There was never any dispute as to the ownership of the $7/8^{th}$ interest (CR I 28-39; RR I 10 ll 18-19; Long brief at 37). And while Long argues that the court's order ordered the entire $8/8^{th}$ interest sold, it did not. It provided only that the property owned jointly by Tate and Long be sold.

Long complains about the fact the order found the property not susceptible to partition in kind. (Long brief at 37). From the very beginning Long has argued that the property was not susceptible to being partitioned in kind and would instead need to be sold. (CR I 116, 188; RR 1 11 ll 16 – 20). Long admits to this stipulation, but argues it wasn't valid without the owners of the outstanding $1/8^{th}$ interest. (Long brief at 38). Long and Tate's stipulation would not only be valid as between them, but binding.

In Issue 6, Long complains about the appointment of a receiver to handle the sale. This too is reviewed for an abuse of discretion. *See Green v. Doakes*, 593

S.W.2d 762, 764 (Tex.Civ.App. – Houston [1st Dist.] 1979, no writ). The parties agreed to the sale of the minerals and the appointment of a receiver is provided for under Rule 770. Tex.R.Civ.P. 770. As the court in *Green* correctly noted, receivers are appointed in practically every partition case pursuant to Rule 770.  *Id.*

Long complains that the order did not require the receiver to take an oath or post a bond.  (Long brief at 40).  The record does not reflect that Long or Woodbine ever made this complaint to the court, so it does not appear this complaint was preserved under Rule 33.1(a)(1).  Tex. R. App. P. 33.1(a)(1). Additionally, even if a silent record would be sufficient to show the receiver was not sworn, there is also nothing in this record to show that the receiver has assumed his duties. *See Davis v. Davis*, 2013 Tex.App. LEXIS 5525 (Tex. App. – Dallas 2013, no pet.).

In the 7th and 8th issues, Long complains about the court's decision to defer its ruling on the interests and outstanding claims until after the sale. (Long brief at 5, 12, 40).  Courts are given wide discretion in managing their dockets and appellate courts do not interfere absent a showing of a clear abuse of that discretion. *Clanton v. Clark*, 639 S.W.2d 929, 931, (Tex. 1982). The fact is, the court did not defer ruling on the amount of anyone's interest - that was never in question.  What the court deferred was ruling on any outstanding claims for

contribution which were to be taken into consideration before the court divided the money.

Rule 760 requires a court to determine the shares and interests of the joint owners, as well as all questions affecting title to the land which may arise in the initial phase of the partition action. Tex. R .Civ. P. 760. Here, the parties agreed their interests would be sold, and there were no questions affecting any title to those interests. Instead, Long is complaining about claims for contribution, which claims were expressly reserved by the court and agreed by the parties and the court not to be waived. (RR 2 14 ll 17-19; 17 ll 2-12, 20-24; 27 ll 2-12; RR1 17 ll 6-10). These monetary claims would simply affect how much of the proceeds from the sale the parties would receive. (CR 1 33; Long brief at 45). They would not affect anyone's title or share of the property in question.

Long's complains that any matters decided in the first judgment may not be considered in an appeal from the second. (Long brief at 43). This is true, but here, the issues relating to any claims for contribution were expressly reserved. Moreover, everyone understood and agreed that any claims for contribution were going to decided later and the proceeds of the sale divided accordingly. (RR1 14 ll 17-19; 17 ll 6-10; RR2 14 ll 7-24; 27 ll 2-12).

Finally, in the last issue, Long argues that the trial court erred by denying the request for a jury trial. (Long brief at 7, 13, 49). While it is true that Long

requested a jury trial in his pleadings, he also represented one was necessary on the issue of whether the land was capable of being partitioned in kind. (CRI 119). At the first hearing Tate's counsel explained that they would agree to selling the interests in an effort to expedite matters and avoid having to have a jury trial. (RR 1 6 ll 4-25; 7 ll 1-6). Long never mentioned wanting a jury trial again. Nor did Long or Woodbine ever make any complaint with the court about the court's failure to hold a jury trial. In proceeding with the hearings without complaint, Long has likely waived any such complaint. *See Puntarelli v. Peterson*, 405 S.W.3d 131, 134 (Tex.App.—Housont [1st Dist.] 2013, no pet). Furthermore, even had the issue been preserved, there was no error. The court proceeded according to the stipulations and representations of the parties.

## ARGUMENT AND AUTHORITIES

**Reply to Issue 1**

> **The Court had jurisdiction and "prudential power" to order the mineral interests sold and the proceeds partitioned as requested by both sides.**

Long argues that the trial court was "without either the 'jurisdictional' or 'prudential power' or 'prudential authority' to proceed to partition the leasehold estate of the Young and Thrash Leases without the joinder of owners of all the undivided leasehold interests in the Young and Thrash Leases." ( Long brief at 2). Long claims the court erred in denying the plea in abatement and also in

19

proceeding to judgment because the court was without either jurisdiction or the prudential power to sign the order. *Id.*

An appellate court reviews the trial court's ruling on a plea in abatement using an abuse of discretion standard. *See Wyatt*, 760 S.W.2d at 248. A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Johnson*, 700 S.W.2d at 917. A court acts arbitrarily and unreasonably when it acts without reference to guiding rules and principles. *Downer,* 701 S.W.2d at 241-42.

Long argues that "Tex. R. Civ. P. 757 sets forth jurisdictional requirements for bringing a partition action, and among its requisites, is that all persons holding a cotenancy interest in the possessory estate are joined as parties." (Long brief at 15). According to Long, the joinder of all parties is jurisdictional in a partition action even after Rule 39 was amended. Tex. R. Civ. P. 39.

In truth, it is not even necessary to decide which rule governs the joinder of parties in this case. The parties agreed that the court had subject matter jurisdiction and also agreed and even requested the procedure the court followed in this case. Long acknowledged that this "was not just a straight partition action where you're going to parcel it out and sell it, but it goes to the question also of contribution claims, and the Court assumes jurisdiction over it under our agreement." (R 2 17 ll 7-12).

But the fact is, as Tate urged, it was not necessary to join the owners of the remaining 1/8th interest in these leases. Long and Tate jointly owned 7/8th of the working interest in the Young and Thrash leases and that was the property sought to be partitioned. (RR 1 4 ll 4-16). So Long and Tate owned all of the interest sought to be partitioned. They acquired their interests from Bonanza which had acquired them from Granite. (CR II 214, 224-225).

Rule 757 reads: "Upon the filing of a petition for partition, the **clerk shall issue citation for each of the joint owners, or joint claimants**, named therein, as in other cases, and such citations shall be served in the manner and for the time provided for the service of citations in other cases." Tex. R. Civ. P. 757. Again, Long and Tate were the only joint owners of the 7/8th working interest.

Long argues that, "First, Texas courts have long recognized that Tex. R. Civ. P. 757 sets forth jurisdictional requirements for bringing a partition action, and among its requisites, is that all persons holding a cotenancy interest in the possessory estate are joined as parties." (Long brief at 16). Long cites *Ward v. Hinkle,* 117 Tex. 566, 8 S.W.2d 641 (1928), for the proposition that: "It is well settled in this court, that whenever in the course of a partition suit it is disclosed that all who have an interest in the property to be divided are not parties, it is the duty of the court to arrest the proceedings until they are made parties, and this

should be done at any stage of the case." *Id.*, at 579, 645 quoting *Maverick v. Burney*, 88 Tex. 560, 32 S.W. 512 (1895).

Here, all parties who owned an interest in the property to be divided, namely the 7/8th working interest, were parties to the suit. This was not a suit to divide or sell a tract or parcel of land, but instead to sell a separate and defined interest in oil and gas. Long and Tate were the only indispensible parties since they were the only co-owners of the interest sought to be partitioned. The sale of their 7/8th interest would have no affect on the owners of the remaining 1/8th.

Moreover, Long's argument does not support the conclusion that had there been a failure to join all necessary parties the court would have lacked either jurisdiction or prudential power to proceed. The lack of necessary parties to a partition does not deprive the court of subject matter jurisdiction. *See Hudson*, 2014 Tex. App. LEXIS at 12660. Instead, under Rule 39, the trial court is to decide whether it has authority to proceed and if it does proceed, then its judgment is considered a final and complete adjudication of the dispute as to the parties before the court. *See Brooks,* 141 S.W.3d at 162.

Long acknowledges that the Supreme Court's pronouncements in *Brooks*, 141 S.W.3d at 162, might defeat the argument that this was jurisdictional, but argues that if this Court decides it is not jurisdictional, then it should be reviewed under a "prudential power" standard of review. (Long brief at 20). Long contends

22

that in *Brooks*, the court noted the preference "to address non-joinder issues under a 'prudential power' standard of review." As noted above, the correct standard of review is abuse of discretion. It is unclear what Long means by a "prudential power standard of review," but presumably it would require a finding that the court acted with prudence.

Long also argues that there really is no distinction between jurisdiction and prudential power, except whether the issue is fundamental error when not raised below. *Id.* Long contends that the question whether this is fundamental error isn't at issue here since it was preserved below. This argument misses the point and completely glosses over the distinction the Texas Supreme Court was making in *Brooks*. In *Brooks*, the Supreme Court disagreed that the absence of parties deprived the court of jurisdiction. *See Brooks,* 141 S.W.3d at 161-2. The Court held that the question was not one of jurisdiction, but rather whether the trial court should have proceeded to enter judgment when a subset of homeowners had not been joined in the suit. *Id.*, at 162.

Long relies on this Court's opinion in *Carper v. Halamicek,* 610 S.W.2d 556, 558 (Tex. Civ. App.--Tyler 1980, writ ref'd n.r.e.). *Carper* should not be controlling since it dealt with a tract of land, not an oil and gas interest. While, in *Carper,* this Court recognized that "Proceeding without an 'indispensible' party was previously regarded as fundamental error and stripped the court of jurisdiction

to decide a case;" it then decided that the lack of a necessary party in a partition was indeed one of those rare instances that might deprive a court of jurisdiction to proceed. *Carper*, 610 S.W.2d at 557. The biggest difference between *Carper* and the current case is that there, the absent parties' rights had been adjudicated without their presence or participation. *Id.*, at 559. Their interests were affected and their rights adjudicated without their participation in the suit. Here, all that was affected was Long and Tate's 7/8th interest. The remaining 1/8th interest was not affected by the suit, nor were the owners of the other 1/8th rights adjudicated in any way. Further, the owners of that interest would not be estopped from filing any claim against the participating parties.

Another difference is that in *Carper*, the Court was requested to file and did file findings of fact and conclusions of law. *Id.*, at 557. Here none were requested or filed. When no findings are requested or filed, the reviewing court implies all of the findings of fact necessary to support the judgment. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). "When the appellate record includes the reporter's record and clerk's record, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *Id.*

Long also cites a number of cases that are distinguishable to this one. In *Gilmer Indep. Sch. Dist. V. Dorfman*, 156 S.W.3d 586, 588 (Tex. App. Tyler 2003, no pet.) [Long brief at 20], this Court addressed the need for the Commissioner of Education to be joined in a suit to declare a statute unconstitutional. *Love v. Woerndell*, 737 S.W.2d 50 (Tex. App. – San Antonio 1987, writ denied) [Long brief at 21] addressed the failure to join all heirs in a suit affecting the title to real property. The court wrote, "The heirs of a decedent are jurisdictionally indispensible parties to a suit against the estate which involves real estate…." Clearly a ruling in that case adjudicating title to property of an estate would affect all heirs. That is not the case here. Here, Tate and Long were the only owners of the property to be affected, namely the $7/8^{th}$ working interest. No one else would have their interests altered or affected by the Court's order to sell that $7/8^{th}$.

*Dukes v. Migura*, 758 S.W.2d 831, 832 (Tex.App.—Corpus Christi 1988), *rev'd on other grounds,* 770 S.W.2d 568 (Tex. 1989) [Long brief at 21], involved the foreclosure of a lien on real property securing a debt. There the court recognized that "Thus, under current Rule 39, the failure to join 'necessary' or even 'indispensable' parties does not render a judgment void and totally unenforceable. It is enforceable between the parties which were before the court and is *res judicata* to them." *Id.*, at 833. The court then stated, "A judgment may be void in part and valid in part, provided the valid portion is not so dependent on

25

the invalid that it falls with it. *Kubena v. Hatch*, 144 Tex. 627, 193 S.W.2d 175, 177 (1946); *State v.Blair*, 629 S.W.2d 148, 150 (Tex. App. -- Dallas), *aff'd*, 640 S.W.2d 867 (Tex. 1982). We hold that the first judgment is void insofar as it purports to affect appellant's interest and cannot be enforced against that interest. No valid lien on appellant's interest in the devised realty exists." *Id.*, at 834.

Long also contends that *Mustang Drilling, Inc. v. Cobb*, 815 S.W.2d 774 (Tex.App.—Texarkana 1991, writ denied) supports Long's argument rather than Tate's. (Long brief at 23). Long is wrong -- *Mustang Drilling* supports Tate. The question in *Mustang Drilling* was whether a 1933 partition had actually divided the surface and the minerals, or just the surface. *Mustang Drilling*, 815 S.W.2d at 775. Cobb had argued that the minerals were not covered, because all mineral owners were not parties, and the court therefore did not have the mineral estate before it. *Id.*, at 777. The court disagreed, finding "all those owning shares of the estate of Joe and Lemmer Pierson, both as to surface and minerals, were parties, and it was the estate that was being partitioned." *Id.* In other words, the court looked at what interests and/or property were affected by the partition. There, everyone owning a share of the estate was a party. Here, everyone owning any portion of the 7/8[th] working interest was a party. No one else's interests were involved or affected.

Long also argues that Tate misconstrued the holding in *Texas Oil & Gas Corp. v. Ostrom,* 638 S.W.2d 231 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). (Long brief at 25). In *Ostrom*, this Court wrote:

> *Rule 39(a)* no longer speaks of 'necessary' and 'indispensable' parties, and Texas courts have begun to discard these terms. *Carper v. Halamicek, 610 S.W.2d 556, 557* (Tex. Civ. App. -- Tyler 1981, writ ref'd n.r.e.). Moreover, *Rule 39* focuses not so much upon whether the court has jurisdiction, but upon whether the court ought to proceed with the parties before it. *Cooper v. Texas Gulf Indus., Inc., 513 S.W.2d 200, 204 (Tex. 1974)*. The *Cooper* decision did not rule out the possibility that a party's absence would deprive the court of jurisdiction to adjudicate the dispute between the parties before it; however, it did state that this situation would be 'rare indeed.' *Id.* One commentator has noted that under *Rule 39* any change should be to lessen the number of 'indispensable' parties. Moreover, 'if a party were held not indispensable under the  prior rule, he should not be held indispensable under the amended rule [*Rule 39*]. 1 McDonald, Texas Civil Practice § 3.23 (1981).

*Ostrom*, 638 S.W.2d at 233. This Court also wrote, "The general rule in a partition case is that all owners of property must be joined. *Ward v. Hinkle, 117 Tex. 566, 8 S.W.2d 641, 645 (1928)*; *Carper v. Halamicek, supra; Clegg v. Clark, 405 S.W.2d 697, 698* (Tex. Civ. App. -- Waco 1966, writ ref'd). Implicit in this rule is that the owners who must be joined are the owners of the property sought to be partitioned." *Id.*

This Court held that the royalty owners were not necessary parties, and while the Court talked in terms of non-possessory interests, etc., it noted that the non-possessory interest owners' interest would be neither increased nor decreased. *Id*., at 234, citing *Veal v. Thomason*, 138 Tex. 341, 159 S.W.2d 472 (1942). This

27

Court concluded that the absence of the lessors and royalty owners did not deprive the Court of jurisdiction to adjudicate the dispute as to the parties before it. *Id.* This Court also noted in *Ostrom* that "The trial court is vested with broad discretion concerning questions of joinder. Thus we will reverse only with a clear showing that it has abused its discretion." *Id.*, at 235, n. 7.

Finally, Long argues that Tate has failed to recognize the underlying practical and policy reasons for the joinder of all those owning an interest. (Long brief at 29). Yet, it is Long that fails to see these reasons. Long and Tate were co-owners of 7/8th of the working interest. They wanted to part ways and divide their respective interests. While Tate originally sought to partition the interest in kind, Long argued it was not susceptible to partition in kind, but had to be sold. Tate decided to agree with Long. His counsel explained that in doing so, this would eliminate the need for the jury trial, expedite matters and be an efficient and economical way to resolve the case. (RR 1 7 ll 1-6). The court actually granted the abatement to take up the party question. (RR 1 24 ll 3-4). The court subsequently denied the motion after giving the parties the chance to fully brief the issue. (CR II 363).

Tate is correct that all that was ever sought to be partitioned was their joint interests – the 7/8th interest. Long is correct that they will each continue to share their interests with the outstanding owners of the remaining 1/8th. Contrary to

28

Long, the court could and did grant complete relief as to these parties. Ordering the division of these two partners' interests and selling it as requested by Long should have no effect on the outstanding 1/8th interest. As such, the order  is  final and enforceable as to Long and Tate.

**Reply to Issue 2**

> **Tate and Miken Oil properly pled an action in partition of these mineral interests under Rule 756 and the court was correct to deny Long and Woodbine's special exceptions on this ground.**

Long continues to complain about the absence of the 1/8th  interest owners, this time couching it in terms of error "in awarding the judgment by denying Long's Special Exceptions." (Long brief at 2). Long contends that Tate and Miken failed to properly plead an action for partition.   (Long brief at 2). "Special exceptions may be used to challenge the sufficiency of a pleading. TEX. R. CIV. P. 91; *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). The purpose of a special exception is to compel the clarification of the opposing party's pleading when that pleading is not sufficiently specific or fails to plead a cause of action. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). A trial court has broad discretion in ruling on special exceptions. *See id*. A trial court's ruling will be reversed only if there has been an abuse of discretion. *See Aldous v. Bruss*, 405 S.W.3d 847, 857 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Pleadings are liberally construed, but special exceptions are appropriate when a pleading

does not meet the threshold of "fair notice" of the pleader's contentions. *See id.*" *James v. Underwood*, 438 S.W.3d 704, 715 (Tex.App.—Houston [1st Dist.] 2014, no pet.).

Long correctly notes that the court held a hearing on these special exceptions. (Long brief at 35). Long also admits that the court never expressly ruled on the special exceptions. (Long brief at 35). However, Long contends that the denial of these special exceptions would be implied. Long cites *Guerrero v. Salinas*, 2006 Tex. App. LEXIS 8562, 9, 2006 WL 2294578 (Tex. App. -- Corpus Christi 2006, no pet.) as support. (Long brief at 35). There, the court actually noted that "Where the record does not show the movant obtained a ruling on the special exceptions, the movant has failed to preserve this complaint for appellate review. *DART v. Edwards*, 171 S.W.3d 584, 587 (Tex. App.--Dallas 2005, pet. denied) Here, however, because trial did proceed on the pleadings as filed, and because the trial court's denial of the special exceptions is essentially acknowledged by all parties and supported by the record, we infer that the trial court denied the special exceptions." *Id.*

The Court in *Guerrero* also noted that:

The trial court has wide discretion in ruling on special exceptions. *Mulvey v. Mobil Producing Tex. & N.M.*, 147 S.W.3d 594, 603 (Tex. App.--Corpus Christi 2004, pet. denied); *Kutch v. Del Mar College,* 831 S.W.2d 506, 508 (Tex. App.--Corpus Christi 1992, no writ). To determine whether a trial court abused its discretion, we must decide whether the trial court acted

without reference to any guiding rules or principles, in other words, whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42, 29 Tex. Sup. Ct. J. 88 (Tex. 1985). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*"

*Guerrero*, 2006 Tex. App. LEXIS 8562 at 6-7.

Unlike the facts in *Guerrero*, it is questionable whether Long preserved this issue for review. While Long had filed special exceptions, no ruling was ever obtained and instead the court proceeded with the procedure it found to be agreed upon by the parties. At the conclusion on the hearing covering the special exceptions, the court stated, "And I would be at this point in time to be inclined, and I would think ya'll would hopefully want to get all of that resolved before this Court, if possible." (RR 1 20 ll 1-20). Long and Woodbine's counsel replied, "Yes, sir." (RR 1 20, ll 3). The court then stated, "If possible. Okay. Everybody is shaking their head yes for the record." *Id.*, ll 4-5. The court then summarized, "All right. Let's go through this. The parties, that's the first dominant issue, to make sure we have all parties before the Court with affidavits filed before the Court under oath with any interest either party might have, know of, et cetera. The Court will rule upon necessary parties at that time." (RR 1 21, ll 6-11). The court concluded, "All right. So we determine the parties, make sure we have all parties before the Court. At that time, subject to whatever interest they might have or whatever arguments they might have, order the property sold, and then determine

31

ownership of the property." (RR 1 22 ll 10-14). At a later hearing, after getting assurance that they would not waive anything, Long and Woodbine again agreed with the court as to the procedure that would be followed. The court again set out the procedure to be followed, advised that the remaining dispute at that time was "the party issue, and the additional other lawsuits." (RR 2 23-25).

Long and Woodbine should be found to have waived any complaint regarding the denial of their special exceptions, but that doesn't matter since the court would have acted well within its discretion had it issued such a ruling. "The trial court has a duty to schedule its cases in such a manner as to expeditiously dispose of them. For this reason the court is given wide discretion in managing its docket, and we will not interfere with the exercise of that discretion absent a showing of clear abuse. No such abuse has been shown here." *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982).

**Reply to Issues 3, 4, and 5**

**There was sufficient evidence to support the trial court's order.**

**Reply to Issue 3**

**The court correctly ordered the mineral interests jointly owned by the parties sold as requested by both sides. It was undisputed that Tate and Miken owned an interest and the order correctly reflected that it was partitioning all of the property jointly owned by the parties.**

**Reply to Issue 4**

> **There was sufficient evidence to support the court's order as to Tate and Miken.**

**Reply to Issue 5**

> **Long and Woodbine pled and stipulated that the mineral interests were not subject to partition in kind and agreed that they should be sold.**

When considering a legal sufficiency challenge after a bench trial, the reviewing court views the evidence in the light most favorable to the trial court's findings, crediting favorable evidence if reasonable fact-finders could, and disregarding contrary evidence unless reasonable fact-finders could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The court must indulge every reasonable inference that would support the trial court's findings. *Id*. at 822. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the decision under review." *See Id*. at 827.

In the review of a factual sufficiency complaint, the court reviews all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). The trial court's factual findings will be overturned only if they are so against the great weight and preponderance of the evidence as to be unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). A factual sufficiency challenge

from a bench trial is reviewed in the same manner as a jury trial. *K.C. Roofing Co., Inc. v. Abundis*, 940 S.W.2d 375, 377 (Tex.App -- San Antonio 1997, writ denied). A review of the factual sufficiency from a bench trial involves the review of the trial court's findings of fact. When those findings are missing, the reviewing court presumes that the trial court found all fact questions in support of the judgment. *IKB Industries v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997).

Long begins by arguing that the trial court made certain findings and conclusions which are in error. (Long brief at 35). Long then refers this Court to the Order in question. (CR IV 1116). As noted above, no findings of fact were requested or filed in this case. And the rules expressly provide that "Findings of fact shall not be recited in a judgment." Tex. R. Civ. P. 299a. Moreover, even if these were properly considered the findings of the court, Long's arguments have no merit.

Long complains that the court abated the matter to proceed with consideration of the proper parties. (Long brief at 35). Long argues that there was no proper evidence before the court as to ownership at the time it entered its order. (Long brief at 36). Both sides briefed the issue and provided what evidence they wanted considered. (CR II 213, 296). And as discussed above, there was never any question that Tate and Long owned the 7/8[th] interest sought to be divided. Long and Woodbine even recounted the history of Tate and Long's ownership in their

Counterclaim and Plea in Intervention and requested a declaration of co-tenancy. (CR I 28-39). At the first hearing, Tate's counsel represented that there was no question but that Tate and Long owned $7/8^{th}$ of the working interest in the Young and thrash leases. (RR 1 5 ll 14-16). In response, Long and Woodbine's counsel argued that even if the parties agreed as to their interest, the owners of the outstanding $1/8^{th}$ would be affected and needed to be joined. (RR 1 10 ll 18-19). What Tate and Long owned has never been the issue. In fact, Long even acknowledged that interest in the brief. (Long brief at 37). Instead, Long only argued that the outstanding interest owners had to be joined. And even then, Long and Woodbine appeared to drop that argument when assured that any claims for contribution would not be waived. (RR 2 ll 17-24).

Long also contends that the court ordered the entire $8/8^{th}$ sold, but that is not what is reflected in the order. The order provides that Tate and Long are the owners of the interests attached in Exhibits A and B. (CR VI 1116). Those exhibits are the sale documents from Bonanza of its interests to Tate and Long. (CR VI 1117 & 1122). The court simply ordered that the property owned jointly by Long and Tate be sold and the proceeds be distributed according to the further orders of the court. (CR VI 1116).

Long complains that the order recites that Long and Riverine were the owners of the interests together with Tate and Miken. (Long brief at 36). Riverine

was in fact non-suited from the Gregg County suit before the transfer. (CR I 19). However, as the court noted that the proceeds would be divided later pursuant to the further orders of the court, any error in including Riverine would be harmless error and can be resolved when the issues of contributions and claims are finally resolved by the trial court.

Long also complains that the order found the property was not susceptible to being partitioned in kind.  (Long brief at 37).  From the very beginning it was Long that argued the property was not capable of being partitioned in kind.  (CR I 116, 188). In his second amended answer Long even stated that if the property was to be partitioned it "should be by sale, not in kind."  (CR I 188).  And Long expressly represented to the court at one hearing that "We agree that that is not susceptible to being partitioned in kind." (RR 1 ll 16-20).  While Long acknowledges this stipulation, he contends that it was not valid without the joinder of the outstanding interest owners. (Long brief at 38).   Long also argues that while he made the stipulation, there was no clear and unambiguous stipulation or announcement and that this stipulation was conditioned upon timing and ripeness.

A stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matters incident thereto."  *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1988). Courts favor stipulations to expedite litigation, and as a general rule, valid stipulations are

binding on the parties. *See e.g. New v. First Nat'l Bank*, 476 S.W.2d 121, 124 (Tex.Civ.App. – El Paso 1972, no writ). "Orderly judicial procedure requires that admissions and stipulations properly comprising the record be observed. The reviewing Court is likewise bound by the stipulation of the parties." *Id.*, at 122-23, internal citations omitted. The fact is, the stipulation would be binding on Long and Woodbine since they were the ones who made it, not only in open court, but in written pleadings. Moreover, the court was entitled to rely upon the parties' stipulation as constituting sufficient evidence of that fact and there would be no error in the trial court making such a finding.

The evidence was sufficient to support the trial court's order.

**R**eply to Issue 6

**The court properly appointed a qualified receiver to handle the sale of the jointly owned mineral interests.**

Here, for the first time, Long complains about the court's appointment of a receiver to sell the property. As with many of Long's other issues, this complaint also requires a showing of an abuse of discretion. *See Green*, 593 S.W.2d at 764. The court carefully laid out the procedure it was going to adopt, which was approved by the parties and implemented by the order. At one of the two hearings, the court explained that, "So then the order of the Court would be that you're not waiving any rights for contributions under the statute because you're allowing the

case – the property to be sold first without making that determination prior to the sale of the property." (RR 2 17 ll 20-14). In its order, the court then appointed Ronnie Swink as receiver to sell the property by public or private sale. (CR VI 1116). No one ever complained to the court about the appointment of Mr. Swink and the court was well within its discretion to appoint a receiver in this case.

Rule 770 provides: "Should the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it shall order a sale of so much as is incapable of partition, which sale shall be for cash, or upon such other terms as the court may direct, and shall be made as under execution or by private or public sale through a receiver, if the court so order, and the proceeds thereof shall be returned into court and be partitioned among the persons entitled thereto, according to their respective interests." Tex.R.Civ.P. 770. Here as discussed above, the parties agreed numerous times to the sale of the property.

Long complains that Tate failed to make application for a receiver. (Long brief at 39). As discussed at length above, Tate sued Long for partition of the property. Long responded that the property could not be partitioned in kind, but needed to be divided. Tate agreed and the court carefully crafted its order around what it understood to be the parties' agreement.

In *Green*, 593 S.W.2d at 764, the court rejected a similar argument as being "wholly without merit." The court then noted that receivers have been appointed in practically every partition case pursuant to Rule 770. *Id.* The court concluded that: "The appointment of a receiver lies within the discretion of the court and may be invoked whether specifically prayed for or not." *Id.* Here, the court acted within its discretion to appoint a receiver.

Long complains that the Order did not require the receiver to take an oath or post a bond as required by sections 64.022 and 64.023 of the Civil Practice & Remedies Code. Nowhere in the record is it reflected that Long or Woodbine ever made this complaint to the trial court. The order was entered on July 13, 2014. The Texarkana Court of Appeals rejected a similar argument in *In re Davis*, 418 S.W.3d 684 (Tex.App.—Texarkana 2012, orig. pro.). There, the court found that the complaint had not been made known until well after the receiver was appointed and had not been preserved under Appellate Rule 33.1(a)(1). Tex. R. App. P. 33.1(a)(1). In another case, the Dallas Court overruled a similar complaint finding that the record was silent on the issue and further finding that even if a silent record could be sufficient to show the receiver had not been sworn, the record failed to show the receiver had assumed his duties. *Davis v. Davis*, 2013 Tex.App. LEXIS 5525 (Tex.App.—Dallas 2013, no pet.). The court did not abuse its discretion in appoint Mr. Swink as receiver.

**Reply to Issues 7 and 8**

>**Reply to Issue 7**

>**The court proceeded properly and the parties stipulated that no issues would be waived pending the second phase of the partition proceeding.**

>**Reply to Issue 8**

>**The court entered its order after conducting a proper hearing with all parties and after the parties agreed on the record that the interests be sold and the money deposited into the registry of the court; further, the court and the parties agreed that on the record that Long and Woodbine were not waiving any claims for contribution**.

Long complains that the court deferred ruling on the interests and outstanding claims until after the property was sold. (Long brief at 40). Long complains that under the rules certain matters are required to be determined in the first phase of the partition. (Long brief at 41). Rule 760 reads, "Upon the hearing of the cause, the court shall determine the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law or equity affecting the title to such land which may arise." Tex.R.Civ.P. 760. Long argues that the court failed to follow this rule. Long is wrong. As discussed above, the parties agreed that the property should be sold. As such, there was no question of law or equity that would affect title. Instead, those questions would affect what amount of the proceeds each party should receive and this was what was deferred for a later hearing.

Long cites to *Hanrick v. Gurley*, 93 Tex. 458, 54 S.W. 347 (1899). While the court in *Hanrick* discusses the principles of contribution and the need to adjust the equities in a partition, it has very little in common with the current case and does not support Long's argument. *Id.*, at 475. *Hanrick* involved the claims of several heirs to title to lands owned by a relative who died intestate. *Id.,* at 463. As title was involved, the court had to adjust the equities prior to designating how much of the land each party was entitled to receive.

Long's arguments regarding *res judicata* based upon *Hanrick* are equally misplaced. As discussed above, the parties agreed to this procedure and the court was careful to make sure it was adhering to that agreement. At one hearing, Long's counsel stated, "So the language of the Court makes it clear that that's not just a straight partition action where you're going to parcel it out and sell it, but it goes to the question also of contribution claims, and the Court assumes jurisdiction over it under our agreement." (R 2 17, ll 7-12). The court agreed, advising the parties that: "All right. So then the order of the Court would be that you're not waiving any rights for contribution under the statute because you're allowing the case – the property to be sold first without making that determination prior to the sale of the property." (RR 2 17 ll 20-14). Tate's counsel then said, "I just want to make sure our position if clear. As far as we're arguing the timing and the urging that the leases be sold sooner rather than later, we're not doing so to try to trick or to lead

41

counsel into some trap. If there's evidence of that, Mr. Clark and I both have said on the record today that we've stipulated that whatever claims they have of any kind or character, we will say that they can make those claims against these funds. We are not trying to say or argue that they would have waived anything, and we're willing to say that and we do say that at this time." (RR 2 27 ll 2-12).

Long relies upon *Ellis v. First City Nat'l Bank,* 864 S.W.2d 555 (Tex.App.—Tyler 1993, no pet.), for the proposition that whether the property is susceptible to partition in kind has to be decided in the first hearing. As discussed above, Long has argued that the property was not capable of being partitioned in kind from the very beginning. (CR I 116, 188). In his second amended answer Long stated that if the property was to be partitioned it "should be by sale, not in kind." (CR I 188). And Long expressly represented to the court that "We agree that that is not susceptible to being partitioned in kind." (RR 1 ll 16-20). So the court did not have to make that decision – the parties were in agreement that the property should be sold. And the court was well within its discretion to rely upon the stipulation of the parties.

Long argues that matters decided in the judgment from the first phase may not be considered in the appeal of the judgment from the second phase. (Long brief at 43). That is true since the first judgment is a final and appealable judgment. However, here these matters were not decided in the first judgment, but expressly

reserved by agreement of the parties to be determined by the court later. Long complains that a fact issue remains as to whether Tate owes Long money and argues that Tate is attempting to deny Long his right to relief on his claims for contribution. (Long brief at 45). But as seen above, Tate expressly agreed and stipulated that Long has in no way waived his right to contribution. (RR 2 27 ll 2-12). Long continues to urge that matters decided in the first phase cannot be appealed from the second judgment. (Long brief at 47). But again, this matter was not determined in the first phase and was expressly reserved by agreement to be decided later.

Long advised the court several times of concerns about liens and potential claims. (See e.g. RR 1 16-17). Tate agreed that these claims were preserved for determination later. (RR 1 17 ll 6-7). Long and Woodbine's counsel then represented, "I think we have reserved Woodbine's position by filing." (RR 1 17 ll 9-10). To which the Court replied, "Right, And the Court would so order that you have." *Id.*, ll 11-12. Another time, Long and Woodbine expressed concerns that they not waive any rights, stating "if we could have an agreement that's somewhat procedurally and substantively binding by agreeing to that method to do it that we're not waiving our claim for contribution." (RR 2 14 ll 17-19). ). Tate agreed and Long concluded, "So the language of the Court makes it clear that that's not just a straight partition action where you're going to parcel it out and sell it, but it

goes to the question also of contribution claims, and the Court assumes jurisdiction over it under our agreement." (R 2 17, ll 7-12). The court also agreed, stating: "All right. So then the order of the Court would be that you're not waiving any rights for contributions under the statute because you're allowing the case – the property to be sold first without making that determination prior to the sale of the property." (RR 2 17 ll 20-14). So there was no question that all parties agreed and the court ordered this issue be reserved for a later determination. No title to property was at issue. The contribution Long claimed was monetary, not a different share of the mineral estate. (CR I 33; Long brief at 45).

Long also includes an argument that Tate should have been denied the right to partition of the property because he had "unclean" hands based on Long's claims for contribution. But as shown, Long agreed that the property should be sold and the funds divided.

Long cites to *Hoover v. Materi*, 515 S.W.2d 406 (Tex.Civ.App. – El Paso 1974, writ ref'd n.r.e.). Long is correct that *Hoover* involved the distribution of proceeds from a sale. However, Long is incorrect that *Hoover* supports his argument. That case involved the distribution of proceeds between two cotenants following the sale of certain property at a sheriff's sale. *Id.*, at 407. There the trial court had already ordered the property sold and the proceeds be divided equally before one party asked the court to take into consideration a purchase money note

and lien the other party has secured against the property. *Id.* The problem there was the question of contribution was not timely raised. The court even stated:

> Had the issue been timely raised the trial Court could have required in its judgment providing for the Sheriff's sale, that if Appellant was the successful bidder, the first $10,000.00 of the proceeds of the sale allocated to Appellee be used to pay off the lien placed on the property of Appellee. As noted in 68 C.J.S., Partition, § 144b, p. 239: In actual partition the court may declare that an encumbrancer has a valid lien on the interest of one of the tenants in common; or, if a sale is found necessary, the court may ascertain the amount due and order it paid out of the distributive share of the encumbrancing tenant, and this may be done even after the sale in partition.

*Id.* Thus, contrary to Long's argument, Hoover recognizes that the court may ascertain the amount due and order it paid out of one co-tenant's share "even after the sale in partition."

Here the court proceeded properly. The parties agreed the land could not be partitioned in kind and that it should be sold and the money divided. The court ordered the property sold and agreed the proceeds were to be deposited into the registry of the court. The court would then determine any claims for contribution. (RR 2 13 ll 8-13; 16 ll 1-8; 17 ll 7-12 and 20-14; 23 ll 11-12; 27 ll 3-12; CR VI 1116).

**Reply to Issue 9**

**The court conducted a proper hearing with all parties before entering the order.**

Finally, Long complains that he requested and did not get a jury trial. (Long brief at 49). This Court reviews the trial court's denial of a jury demand for abuse of discretion after consideration of the entire record. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996).

Long pled that whether jointly owned land was capable of partition in kind was a matter for a jury and requested a jury trial on all matters in partition. (CR I 119). At the first hearing, Tate's counsel noted this and suggested that by agreeing to sell the land, as proposed by Long, the parties could expedite matters and avoid the time and expense related to a jury trial. (RR 1 6 ll 4-25; 7 ll 1-6). Long never mentioned wanting a jury trial again at either this hearing or the later one. Additionally, Long did not file any subsequent request or complaint with the court regarding a jury trial on any matters, nor would any be necessary. As discussed above, the court simply ordered the interests sold and reserved the question of any claims for contribution and the proper division of the proceeds until later.

In *Puntarelli v. Peterson*, 405 S.W.3d 131, 134 (Tex. App. -- Houston [1st Dist.] 2013, no pet.), Puntarelli had filed a request for a jury trial and paid the jury fee. However, there was nothing in the record to indicate that he objected to the court conducting a bench trial. The appellate court wrote, "We agree with Peterson

46

that Puntarelli's proceeding to a bench trial without objection waived any complaint." *Id.*

Long argues that he pled defenses raising issues of fact including Appellees' waiver of their right to partition; Appellees' unclean hands; and whether the properties were susceptible of being partitioned in kind. (Long brief at 50). However, he never made that request again after Tate agreed to Long's suggestion that the property was not susceptible to partition in kind, but would need to be sold. The parties agreed that the property should be sold and had stipulated that the court could determine any claims for contribution after the sale. Long argues that he has been denied his right to a jury, but again, the court proceeded pursuant to the parties' agreement and stipulations.

Even if this issue was properly preserved, which is doubtful, there was no abuse of discretion. The court acted well within its discretion based upon the representations of the parties and the lack of any further requests or complaints relating to long's jury demand.

## CONCLUSION AND PRAYER FOR RELIEF

The trial court always acted with deference to guiding rules and principles and never abused its discretion in implementing the procedure and issuing the order appealed in this cause. Additionally, there was more than enough evidence, including stipulations and representations by Long and Woodbine, to support the

47

rulings and order being appealed. The court had the discretion and agreement of the parties to order the jointly owned interest sold, the proceeds from the sale deposited and the claims for monetary contribution deferred until a later time. For all of the reasons set forth in this brief, Tate and Miken ask that this Court affirm the judgment of the trial court. They ask for any and all additional relief to which they may be entitled in law or equity as well.

DATE: January 13, 2015        Respectfully submitted,

                                     */s/ Deborah Race*
                                     Deborah J. Race
                                     Texas Bar No. 16448700
                                     Ireland, Carroll & Kelley, P.C.
                                     6101 S. Broadway, Suite 500
                                     Tyler, Texas 75703
                                     Tel: (903) 561-1600
                                     Fax; (903) 581-1071


## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with Texas Rule of Appellate Procedure 9.4(i) because it Contains 12,483 words (excluding the parts of the brief exempted by this rule).

Signed this 13th day of January, 2015.

                                     */s/ Deborah Race*

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to the following persons of record as follows on the 13th day of January, 2015:

F. Franklin Honea
frank@honealaw.com
The Law Offices of F. Franklin Honea
5949 Sherry Lane, Suite 1700
Dallas, texas 75225

Ron Adkison
ron@adkisonlawfirm.com
The Adkison Law Firm
300 W. Main Street
Henderson, Texas 75652-3109

Charles H. Clark
CHC@charlesclarklaw.com
Law Offices of Charles H. Clark
P. O. Box 98
Tyler, Texas 75710

Bruce A. Smith
bsmith@wsfirm.com
Ward & Smith
P. O. Box 1231
Longview, Texas 75606-1231

Clay Wilder
cwilder@suddenlinkmail.com
Wilder & Wilder, P.C.
200 North Main Street
P. O. Box 1108
Henderson, Texas 75653-1108

*/s/ Deborah Race*

# APPENDIX 1

| | | |
|---|---|---|
| MIKEN OIL, INC. AND MIKE TATE, | § § § | IN THE 4<sup>th</sup>JUDICIAL |
| Plaintiffs, | § § § | |
| v. | § § | DISTRICT COURT OF |
| LARRY LONG AND RIVERINE | § § § | |
| Defendants. | § | RUSK COUNTY, TEXAS |

## DEFENDANT LONG'S ORIGINAL COUNTERCLAIM AND PLEA IN INTERVENTION BY WOODBINE PRODUCTION CORP.

Comes nowLARRY LONG (hereinafter referred to as "Long"), Defendant herein, and WOODBINE PRODUCTION CORP.(hereinafter referred to as "Woodbine"), Intervenor herein,and file this its Original Counterclaim and Plea in Intervention by Woodbine Production Corp., and would respectfully show unto the Court, as follows:

### I.

Discovery is intended to be conducted under Level 3 of TEX. R. CIV. P. 190.1 (*i.e.* TRCP.190.4).

### II.

This court has jurisdiction and venue over the subject matter and the persons named herein. Larry Long is the Defendant herein and files this his Counterclaim to protect his rights in this partition action. Woodbine Production Corp. is a Texas

corporation, doing business in Kilgore, Gregg County, Texas. Woodbine has a justifiable interest in this action and Woodbine is entitled to the relief set forth hereinbelow. Woodbine's claims, as Intervenor, are claims that arise from the same transaction or occurrence and have common questions of law or fact as Plaintiff's original claims herein. Woodbine intervenes in this action both as a creditor of Plaintiffs and the assignee of certain of Larry Long's rights to contribution with respect to the cotenancy existing on the leases. Inasmuch as this is an action for partition of a cotenancy in oil and gas leases situated in Rusk County, Texas, and Woodbine is asserting its rights as against one of the cotenants and claiming an equitable lien against the interests of Plaintiffs in the cotenancy, the plea in intervention is compulsory and must be filed in this partition action. In this regard, Tex.R.Civ.P. 760 provides "[u]pon the hearing of the cause, the court shall determine the share or interests of each of the joint owners or claimants in the real estate sought to be provided, and all questions of law or equity affecting the title to such land which may arise." *See also Moseley v. Hearrell,* 171 S.W.2d 337 (Tex. 1943); *Hulsey v. Keel,* 700 S.W.2d 255 (Tex.App.—San Antonio, 1985, writ ref'd n.r.e.); *Yturria v. Kimbro,* 921 S.W.2d 338 (Tex.App.—Corpus Christi 1996, no pet.); *White v. Smyth,* 214 S.W.2d 967, 974 (Tex. 1948). In fact, Plaintiffs should have joined Woodbine in the partition action, but have failed to do so. In fact, without a determination of Woodbine's equitable interests affecting Plaintiffs' title

to such lands to be partitioned, this Court should abate the proceedings until Woodbine is joined as a party. Woodbine is aware that the Court has transferred Woodbine's claims against Plaintiffs to the courts of Gregg County, but files this intervention action inasmuch as the assertion of its claims must be made in this partition action. The original filing of this action in Gregg County preceded the filing of Woodbine's original action which the Court transferred.

Jurisdiction of the subject matter is proper in that the amount in controversy is in excess of $100,000.

## III.

On September 1, 2000, Larry Long and Tate were assigned the mineral leasehold interests in certain lands situated in Rusk County, Texas (hereinafter referred to as the "Young Lease" and the "Thrash Lease"). Said leaseholds being described in Assignment and Bill of Sale from Bonanza Production Company, recorded in Vol. 2215, p. 342 of the Deed Records of Rusk County, Texas and Assignment and Bill of Sale from Bonanza Production Company, recorded in Vol. 2215, p. 337 of the Deed Records of Rusk County, Texas. There was no joint operating agreement signed between Larry Long and Tate and Larry Long and Tate have been conducting business on the Leases as cotenants only.

From the time of the commencement of such cotenancy to the present, Woodbine acted as the designated operator of the wells situated on the Young and

the Thrash Leases with the Texas Railroad Commission. Woodbine has acted as the operator conducting operations on such wells at all times, acting as agent for Assignor and Tate in the common cotenancy estate of the Leases. Woodbine has rendered services, furnished materials and advanced funds in payment of the services provided and materials furnished in operations on the wells of the Leases for the benefit of the common interests of Assignor and Tate.

For many years, Sunoco, the oil purchaser for the oil produced from the Thrash Lease, accounted to Woodbine for the proceeds from the sale of production. Woodbine accounted to Long and Tate for their respective shares of proceeds from production, net of its operating expensesfor wells on the Young Lease and Thrash Lease. Thus arose a course of performance and course of dealing between the partieswherein Woodbine reimbursed itself from the proceeds received from Sunoco for Woodbine's advances of expenses and its services performed and materials furnished in operating the wells on both the Young and Thrash Leases. Woodbine would provide Larry Long and Tate with checks and JIBs which netted out such expenses. This course of performance was well known to Tate.

Subsequently, Tate directed the oil purchaser to pay him directly for his share of the proceeds from the sale of production. When such arrangement was changed, Tate ceased paying and reimbursing Woodbine for its share of the costs of operating the wells and marketing the oil and gas production from the wells on the Young

Lease and the Thrash Lease. When Tate directed Sonoco, the oil purchaser, to pay him directly,Tate ceased paying Woodbine for such expenses as identified on joint interest billings. The joint interest billings and a summary of same are attached hereto as Exhibit "A."

At this time, Tate is indebted to Woodbine for a sum in excess of $141.432.03 by reason of Tate's failure to pay the joint interest billings to date to reimburse Woodbine for his share of the costs of operating the wells on the Leases.

Larry Long has provided Woodbine with an assignment and subrogation agreement which assigns to Woodbine Larry Long's claims as a cotenant for reimbursement of expenses, as well as his equitable claim against Tate's leasehold interest in the Young and Thrash Leases for contribution and reimbursement.

## IV.
### DECLARATION OF COTENANCY OF YOUNG AND TRASH LEASES

Pursuant to TEX. CIV. PRAC.& REM. CODE §37.001 et seq, Woodbine seeks a declaration of its rights against Tate, with respect to Woodbine's rights to reimbursement and also seeks judicial recognition of an equitable lien and constructive trust against Tate's undivided, cotenancy interests in the leaseholds of the Young and Thrash Leases. Woodbine seeks a declaration that: (1) a cotenancy relationship has existed between Long and Tate since September 1, 2000 with respect to the leasehold estates of the Young and Thrash Leases; (2) that Long, as a

cotenant (through Woodbine), advanced monies for necessary and beneficial expenses in the common interest of the cotenants of the leasehold estates of the Young and Thrash Leases; (3) that Woodbinehas a right to reimbursement from Tate, from the proceeds from the sale of production of oil and gas from the Young and Thrash Leases (for which Woodbine, as Long's assignee, seeks enforcement of anequitable lien and constructive trust against Tate's leasehold interest in the Young and Thrash Leases) for monies spent by Long through Woodbine necessarily and beneficially for the common interests of the cotenancy (*i.e.* monies spent for services provided and materials furnished to operate the wells on the Young and Thrash Leases); and (4) that Woodbine, as Long's assignee and subrogee,has a constructive trust or an equitable lien against Tate's leasehold interests in the Young and Thrash Leases,so as to reimburse Woodbine for such services and materials and that Woodbine has been properly assigned such equitable lien by Long.

## V.
## REIMBURSEMENT OWED BY TATE, AS A COTENANT, AND CREATION AND ENFORCEMENT OF AN EQUITABLE LIEN

As set forth hereinabove, Larry Long and Tate were cotenants, as defined by the common law of Texas. As such, Woodbine, acting for Larry Long, and by virtue of the Assignment and Subrogation referred to hereinbelow, is entitled to reimbursement for monies necessarily and beneficially spent to improve the property

in the interest of the common estate. In *Neely v. Intercity Mgmt. Corp.*, 732 S.W.2d 644 (Tex.App.—Corpus Christi 1987, no pet), that court noted the legal relationship of cotenants, the right of reimbursement for improvements to the common interest, and the creation of an equitable lien as relief for the failure of a cotenant to reimburse, as well as the rights of an operator acting as agent for the working interest participants to recover monies for reimbursement of its advances and expenses in operating oil and gas wells. That court held in pertinent part:

> Intercity claims in its brief that it was acting as agent for the participating working interest owners. An agent is one who is authorized by another to transact business or manage some affair and to render an accounting of such transaction. Jorgensen v. Stuart Place Water Supply Corp., 676 S.W.2d 191 (Tex. App. -- Corpus Christi 1984, no writ). It denotes a consensual relationship between two parties by which one acts on behalf of another subject to the other's control. Tamburine v. Center Savings Association, 583 S.W.2d 942 (Tex. Civ. App. -- Tyler 1979, no writ). It follows that, as an agent, Intercity may recover only what its principal could recover under the circumstances. During oral argument, Intercity suggested that it was merely a creditor and likened this case to a suit on a sworn account. We note, however, that no contract existed between appellants and Intercity. We do not believe this action is of a character embraced by Tex. R. Civ. P. 185. We hold, therefore, that, if Intercity is to recover, it is as an agent for the participating co-tenants.
>
> In Cox v. Davison, 397 S.W.2d 200, 201 (Tex. 1965), the Supreme Court iterated the Texas rule that a cotenant who produces minerals from common property without having secured the consent of the other cotenants is accountable on the basis of the value of the minerals taken, less the necessary and reasonable cost of producing and marketing the same. The law will imply a contract on the part of one cotenant to reimburse his co-owners for moneys necessarily spent for the benefit of the common estate. Shaw & Estes v. Texas

Consolidated Oils, 299 S.W.2d 307, 313 (Tex. Civ. App. -- Galveston 1957, writ ref'd n.r.e.). The court, in Shaw, held that the cotenant, incurring speculative expenses in connection with the exploration and development of oil, gas and mineral properties, is not entitled to a personal judgment against his cotenant for reimbursement, but is entitled to be reimbursed out of production if and when production results. However, a cotenant has the right to be reimbursed proportionately for money necessarily and beneficially spent to improve the property.

Shaw explains that a cotenant who spends money "necessarily and beneficially" in the interest of the common estate, has the right to be reimbursed proportionately by his associates, and is entitled to a personal judgment and an equitable lien on the cotenant's interest in the common estate. However, in the case of money speculatively spent, a cotenant is entitled to reimbursement out of the share in actual production. In Shaw the court said that all expenses necessarily incurred by keeping the leases in production were reimbursable, but expenditures which did not extend the leasehold estate, i.e., the reworking operations which were unsuccessful and resulted only in salt water which neither preserved nor benefitted the estate were not recoverable. If a cotenant drills a dry hole, he does so at his own risk and without the right to reimbursement for the drilling cost. Willson v. Superior Oil Co., 274 S.W.2d 947 (Tex. Civ. App. -- Texarkana 1954, writ ref'd n.r.e.).

At all times material to this case, Woodbine has undertaken the responsibility for maintenance and upkeep of the subject property by operations of the oil and gas wells on the Leases. Accordingly, it has paid the sums for the materials furnished and services provided described in Exhibit "A" attached hereto to protect and preserve the common interests of the cotenancy of the leasehold interests in the Young and Thrash Leases. To date, Woodbine has expended $141,432.03 for improvements, consisting of the matters described in Exhibit "A" attached hereto.

These improvements enhanced the value of the subject property by at least $141,432.03.

Neither Long (previously) nor Woodbine, has received any contribution or reimbursement from Tate for such expenditures listed in Exhibit "A" attached hereto. Accordingly, Woodbine requests recovery of such expenditures and/or enhancement from Tate or, alternatively, that the value of such contributions be awarded to Woodbine by allocating an equitable lien and constructive trust against Tate's leasehold interests in the Young and Thrash Leases of a proportionately higher value.

By reason of the foregoing, Woodbine seeks reimbursement from Tate personally for the sum of $141,432.02 to date, as reimbursement for Tate's share of monies spent necessarily and beneficially in the interest of the common estate of the cotenancy on the Young and Thrash Leases, and the recognition and enforcement of an equitable lien or constructive trust in Woodbine's favor against Tate's leasehold interest in the Young and Thrash Leases, and judicial foreclosure of said lien and trust.

## VI.
## QUANTUM MERUIT

As set forth hereinabove, Woodbine provided valuable services and materials, as set forth in Exhibit A attached hereto, which services and materials were

necessarily and beneficially in the interest of the common cotenancy estate of Long and Tate in the leasehold of the Young and Thrash Leases. Even if, there was no express contract covering Woodbine's reimbursement by Long and Tate covering the services and materials Woodbine furnished; the services and materials were provided for the common interest of Long and Tate, and Tate directly benefitted from Woodbine's advances of monies, services provided and materials furnished in operating the wells on the Young and Thrash Leases. Tate has accepted the services provided and materials furnished by Woodbine at all times since September of 2000, with full knowledge and without objection. In this regard, Tate had been billed over the years for his share of the costs and expenses incurred by Woodbine in operating the wells on the Young and Thrash Leases, Tate knew that such services and materials were for his benefit (*i.e.* Woodbine operating the wells on the Young and Thrash Leases, enabled the wells to produce oil and gas, which directly benefitted Tate through his receiving a share of the proceeds from the sale of production of oil and gas from such wells). Further, at all times, Tate had reasonable notice that Woodbine expected compensation from him for the advances Woodbine made, services provided and materials furnished by Woodbine. Notice of such was given in the form of joint interest billings addressed and mailed to Tate at all times, as well as the prior"net-back checks" which he received for his share of the proceeds for production of the wells in the Young and Thrash Leases, less a deduction of

DEFENDANT'S ORIGINAL COUNTERCLAIM AND
PLEA IN INTERVENTION BY WOODBINE PRODUCTION CORP.– Page 10

Woodbine's costs and expenses in operating the wells. Therefore, Tate is stopped to deny the arrangement or to contest the charges. Moreover, Woodbine expected money from Tate for his one-half share of the leasehold interest.

Woodbine is entitled to recover its actual damages from Tate, being the reasonable value of the services provided and materials furnished, which damages are in the sum of $141,432.03.

## VII.
## INTEREST

Pursuant to TEX.FIN.CODE §302.002, Woodbine is entitled to recover from Tate interest at the rate of 6% per year on the principal amounts of the credit extended beginning on the thirtieth day after the dates on which the amounts are due. In this regard, Woodbine is a creditor, as defined by TEX.FIN.CODE §301.002(3) and Tate is an obligor, as defined in TEX.FIN.CODE §301.002(13), and Woodbine has not agreed with Tate on a specific interest rate therefore Woodbine may charge and receive from Tate legal interest as set forth hereinabove. In this regard, interest commences thirty (30) days after each joint interest billing of Exhibit "A" was delivered to Tate.

## VIII.
## ATTORNEY'S FEES

Written demand has been made on Tate for payment of the above sums by the foregoing joint interest billings and by letter dated March 26, 2013. More than thirty

(30) days have expired after the above claim was presented, without payment for the amounts owed being tendered. Woodbine is entitled to recover its reasonable attorney's fees incurred in this action pursuant to TEX. CIV. PRAC.& REM. CODE §38.001. Further, Woodbine seeks recovery of attorney's fees pursuant to TEX. CIV. PRAC.& REM. CODE §37.009.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs are served with process herein pursuant to TEX.R.CIV.P.21a. Larry Long and Woodbine Production Corp. pray that upon final hearing hereof, the Court grant judgment in Woodbine's favor, for (1) the declaratory relief set forth hereinabove, (2) damages as set forth hereinabove, (3) imposition of an equitable lien and/or constructive trust, as set forth hereinabove, (4) interest, both prejudgment and post-judgment, on the damages awarded herein, (5) reasonable attorney's fees as set forth hereinabove, (6) all costs of court, and (7) such other and further relief, both general and special, at law or in equity, to which Long and Woodbine may show themselves justly entitled.

Respectfully submitted,

**ADKISON LAW FIRM**
300 W. Main St.
Henderson, TX 75652-3109
Telephone: (903) 657-8545
Facsimile: (903) 657-6108
ron@adkisonlawfirm.com

BY:_____
Ron Adkison

State Bar No. 00921090

F. Franklin Honea
State Bar No. 09934300
**LAW OFFICES OF**
**F. FRANKLIN HONEA**
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225
(214) 361-9494 X110
(214) 691-2109 (fax)
frank@honealaw.com

**ATTORNEYS FOR PLAINTIFF**
**WOODBINE**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been delivered by facsimile, a manner in accordance with the Texas Rules of Civil Procedure, addressed to the following:

Charles H. Clark
Clark & Porter
P.O. Box 98
Tyler, Texas 75710
Fax: 903-595-1294

Clay Wilder
Wilder & Wilder, P.C.
200 North Main Street
Henderson, Texas 75652
Fax: 903-657-5088

DATED this _9th_ day of _September_ 2013.

_____

# APPENDIX 2

NO. 2013-238

FILED

2013 OCT -9 PM 3: 58

JEAN HODGES, DIST CLK
RUSK COUNTY. TEXAS

BY_____DEPUTY

| | | |
|---|---|---|
| MIKEN OIL, INC. AND MIKE TATE, | § § § | IN THE 4th JUDICIAL |
| Plaintiffs, | § § | |
| v. | § § | DISTRICT COURT OF |
| LARRY LONG AND RIVERINE | § § | |
| Defendants. | § | RUSK COUNTY, TEXAS |

## DEFENDANT LARRY LONG'S SECOND AMENDED ORIGINAL ANSWER

Comes now Defendant, Larry Long ("Long"), and files this his Second Amended Original Answer, and would respectfully show unto the Court, as follows:

## I.
## GENERAL DENIAL

1.     Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant Larry Long generally denies each and every, all and singular, the material allegations in Plaintiffs' Second Amended Original Petition (the "Petition") and demands strict proof thereof, reserving hereby his right to assert any additional defenses which may be applicable.

---

DEFENDANT LARRY LONG'S SECOND AMENDED ORIGINAL ANSWER                    Page 1

## II.
## SPECIFIC DENIALS

### A. Jurisdiction and Venue

2.      Plaintiffs request a partition of leases on land located in Rusk County. Pursuant to the Civil Practice and Remedies Code Section 15.011, actions for partition of real property have mandatory venue in the county in which the property is located. As all of Plaintiffs' claims arise from the same transaction, occurrence, or series of transactions, thus all of the causes of action raised are governed by the mandatory venue provision. CIV. PRAC. & REM. CODE ANN. § 15.004. Therefore, mandatory venue in this matter is in Rusk County, Texas.

3.      Although addressed separately in Defendant's Motion to Abate, Plea in Abatement and Supplemental Plea in Abatement, the lack of necessary parties in this case is a jurisdictional issue because the non-party, cotenant leasehold interest owners have an immediate right of possession in the entire undivided leasehold estate. A decree of partition is therefore "not binding even on those who are parties" unless all holders of undivided interests are joined. *Mustang Drilling, Inc. et al v. Sam B. Cobb, Jr., Trustee, et al,* 815 S.W.2d 774, 777 (Tex. App.-Texarkana 1991, writ denied) (citing *Ward v. Hinkle,* 8 S.W.2d 641 (Tex. 1928)). This rule has survived the amendments to the rules of civil procedure regarding necessary parties. Id. Certain working interest owners in the leasehold estates sought to be partitioned by Plaintiffs are not parties to this lawsuit. Accordingly, this Court may not partition the Thrash and Young leasehold estates without the joinder of the necessary parties.

4.     Additionally, Plaintiff Mike Tate and Defendant Larry Long's actions in developing and producing the Young and Thrash leaseholds have created an implied waiver against partition. Dimockv. Louise Kadane et al, Trustees, 100 S.W.3d 602,608 (Tex. App.-Eastland 2003, pet. denied). Relevant acts evidencing the implied agreement not to partition include Defendant Mike Tate's pledging of his undivided interest as security through a Deed of Trust and joint development of the leasehold estates.

5.     Further, Defendant Larry Long denies that the ownership interests of Plaintiffs and Defendant in the Young and Thrash Leases are susceptible to being partitioned in kind. Developed mineral lands held in cotenancy, as a general rule, are not susceptible to partition in kind because of the elements of uncertainty which are not resolvable at a reasonable cost. Moreover, a partition in kind of the Young and Thrash Leases will result in the market values of the "partitioned leaseholds" being substantially less than the market value of the whole of the present undivided interests in the leaseholds; hence, if partition is granted, it should be partitioned by sale. To avoid an unfair division, the lands are to be partitioned by sale and the proceeds distributed to the parties.

6.     As there is no reasonable way to determine how to partition in kind the minerals at a reasonable cost, the lands should be partitioned by sale, rather than in kind, and the proceeds distributed according to each party's interest.

### III.
### AFFIRMATIVE DEFENSES AND VERIFIED PLEAS

7. Defendant asserts the following affirmative defenses:

a. Estoppel;

b. Failure of consideration;

c. Payment;

d. Statute of frauds; and

e. Waiver.

8. There is a defect of parties.

9. Plaintiffs have failed to join all necessary parties for the resolution of this matter. Tex. R. Civ. P. 39. Specifically, Plaintiffs have failed to join the owners of the one-eighth working interest in the Young and Thrash leases and holders of liens burdening the cotenants' interests in the leaseholds to be partitioned. It is essential that the owners of the entire working interest in these leases be joined as their interests in the leases will be directly and significantly affected by a partition ruling in this action.

WHEREFORE, PREMISES CONSIDERED, Long prays that Plaintiffs take nothing by their claims and causes of action set forth in Plaintiffs' Second Amended Original Petition, that partition be denied, or if partition is granted, the partition be by sale, that lienholders holding liens against Plaintiffs' interests recover their debts either by awarding part of Plaintiffs' partitioned leaseholds to them or providing that their liens be discharged by first applying proceeds awarded to Plaintiffs to the lienholders so that the indebtedness of Plaintiffs may be discharged and not burden Long's partitioned leasehold and/or Long's share of proceeds from the sale, and for such other and further

relief, both general and special, at law or in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**ADKISON LAW FIRM**
300 W. Main St.
Henderson, TX 75652-3109
Telephone: (903) 657-8545
Facsimile: (903) 657-6108
ron@adkisonlawfirm.com

BY: _____
Ron Adkison
State Bar No. 00921090

F. Franklin Honea
State Bar No. 09934300
**LAW OFFICES OF**
**F. FRANKLIN HONEA**
5949 Sherry Lane, Suite 1700
Dallas, Texas 75225
(214) 361-9494 X110
(214) 691-2109 (fax)
frank@honealaw.com

**ATTORNEYS FOR PLAINTIFF**
**LONG AND WOODBINE**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been delivered by facsimile, a manner in accordance with the Texas Rules of Civil Procedure, addressed to the following:

Charles H. Clark
Clark & Porter
P.O. Box 98
Tyler, Texas 75710
Fax: 903-595-1294

Clay Wilder
Wilder & Wilder, P.C.
200 North Main Street
Henderson, Texas 75652
Fax: 903-657-5088

DATED this ___ day of _October_, 2013.

STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF GREGG §

BEFORE ME, the undersigned authority, personally appeared Larry T. Long, who being by me duly sworn, deposed and stated that he is the Defendant in the above styled and numbered cause, and that the statements set forth in Paragraphs 8 and 9 in the Answer are true and correct to his personal knowledge.



LARRY T. LONG

Subscribed and sworn to before me on this _9th_ day of _October_, 2013.

Notary Public in and for
the State of Texas

KAREN DENISE MC KAIN
Notary Public, State of Texas
My Commission Expires
October 23, 2016

---